STATE of Wisconsin, Plaintiff-Respondent,

v.

Steven D. WILLE, Defendant-Appellant.†

Court of Appeals

*No. 93–1111–CR. Submitted on briefs January 6, 1994.—Decided May 26, 1994.*

(Also reported in 518 N.W.2d 325.)

†Petition to review denied.

675

For the defendant-appellant the cause was submitted on the brief of *Walter H. Isaacson* of Janesville.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, with *Mary E. Burke*, assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J.   Steven Wille appeals from a judgment convicting him of causing the death of another by the operation or handling of a vehicle while having a prohibited alcohol concentration under § 940.09(1)(b), STATS.[1] He seeks review of an order denying his motion to suppress physical evidence, samples of blood, taken from him following his warrantless arrest.

The first issue is whether a probable cause determination in an earlier refusal hearing precludes him from challenging probable cause in the homicide case. If not, the second issue is whether the police had probable cause to arrest him. We conclude that issue preclusion does not apply but that the officer had probable cause for Wille's arrest. We therefore affirm both

---

[1] The judgment, while describing the crime as causing a death "by BAC" (blood alcohol concentration), specifies § 940.09 (1)(a), STATS. Wille pleaded no contest to § 940.09(1)(b). We conclude that the trial court intended to specify sub. (b), not sub. (a), in its judgment.

the order denying Wille's motion to suppress and the judgment of conviction.

## 1. Background

At about 8:30 p.m. on August 26, 1990, the Rock County Sheriff's Department responded to a highway traffic accident. Deputy Check found Wille's burning Buick in the middle of the road and a damaged Oldsmobile in the ditch. The dispatcher told Check that Wille owned the Buick. Check saw a man lying on the highway shoulder. That man had been the passenger in Wille's car.[2] Another officer and Wille were performing CPR on the man. Because the officer was getting tired, Check took over and he and Wille administered CPR together. Check smelled intoxicants but could not determine the source.

Deputy Check further investigated and found another injured man in the ditch. That man told Check that he and his sister had been standing in front of his Oldsmobile which had been parked alongside the highway on the shoulder with its emergency flasher lights on. The man and his sister were thrown into the ditch and injured when Wille's car hit their car from behind. After emergency medical personnel arrived, Wille was taken to a Rock County hospital.[3]

Deputy Check told Deputy Hoium and a lieutenant that he had smelled intoxicants and that a fire fighter at the scene had smelled intoxicants on Wille. One of the officers told Hoium that Wille's Buick hit the car parked alongside the road on the shoulder. Hoium also

---

[2] A passing motorist, who was the first to arrive at the accident scene, told Deputy Check that he and Wille had pulled the unconscious man from the passenger side of the Buick.

[3] Wille sustained a facial laceration in the collision.

learned that Wille was the driver of the Buick.[4] The lieutenant sent Hoium to the hospital to contact Wille and investigate the case.

At about 9:20 p.m. Deputy Hoium entered the emergency treatment room Wille occupied at the hospital and immediately smelled a strong odor of intoxicants. Hoium determined that the odor came from Wille. Upon seeing the uniformed deputy, Wille "sat right up off the bed," looked at Hoium and said, "I have got to quit doing this." He repeatedly sat up in the hospital bed and made the same statement when Hoium attempted to obtain information from him in order to issue a citation. Meanwhile, nurses attending to Wille's facial laceration had difficulty making him lie down. Because the nurses kept ordering Wille to lie down and because Wille had a facial laceration, Hoium did not ask Wille to perform field sobriety tests. Rather, Hoium told Wille he was under arrest for operating a motor vehicle while intoxicated, issued a citation, and advised Wille of his rights under § 343.305, STATS., the implied consent law. Hoium asked Wille to submit to a blood test. Wille refused.

Hoium contacted an assistant district attorney, who directed him to obtain a sample of Wille's blood. At Hoium's request, at about 10:20 p.m., hospital personnel drew a blood sample from Wille.

Because of his injury, Wille was transported to the University of Wisconsin Hospital in Madison. Meanwhile, the coroner determined that the passenger in

---

[4] Wille contends that at the time of arrest, the police did not know whether Wille was the driver. However, Deputy Hoium testified at the motions hearing that prior to the arrest, Deputy Check told him that Wille was driving the Buick at the time of the accident and Lieutenant Tellefson told him to go to the hospital and make contact with the driver of the car, Wille.

Wille's car had died of massive injuries to his head and chest. The sheriff's department requested that the university police advise Wille that he would be charged with homicide by intoxicated use of a motor vehicle and that they obtain another blood sample from him. At about 12:20 a.m. a university police officer so advised Wille and hospital personnel drew a blood sample from him.

When a person is arrested for driving a motor vehicle while having a prohibited alcohol concentration an officer may ask the person to provide a blood sample. Section 343.305(3)(a), STATS. If the person refuses, the officer shall take the person's license and issue a notice of intent to revoke, by court order, the person's operating privileges. Section 343.305(9)(a). The person may request a hearing on the revocation—the so-called refusal hearing—held under § 343.305(9). The only issues at the court hearing are: (1) whether the officer had probable cause to believe that the person was driving under the influence of alcohol; (2) whether the officer complied with the informational provisions of § 343.305(3)(a); (3) whether the person refused to permit a blood, breath or urine test; and (4) whether the refusal to submit to the test was due to a physical inability unrelated to the person's use of alcohol. *State v. Nordness*, 128 Wis. 2d 15, 28, 381 N.W.2d 300, 305 (1986).

Having refused to submit to a blood test and having been advised of his right to a refusal hearing, Wille requested the hearing. Following the hearing, the trial court found that Wille was lucid when he spoke with Deputy Hoium and had improperly refused to submit to the blood test requested by Hoium. An information was later filed charging Wille with the same offenses

679

alleged in the complaint. He moved to suppress the blood samples taken from him. The court denied his motion. He subsequently pleaded no contest to the charge of causing the death of another by the operation or handling of a vehicle while having a prohibited blood alcohol concentration, as defined in § 340.01(46m), STATS., contrary to § 940.09(1)(b), STATS.

## 2. Collateral Estoppel/Issue Preclusion

Citing *State v. Seibel*, 163 Wis. 2d 164, 179, 471 N.W.2d 226, 233 (1991), *cert. denied*, 502 U.S. —, 112 S. Ct. 596 (1991) and *State v. Paszek*, 50 Wis. 2d 619, 625, 184 N.W.2d 836, 840 (1971), Wille contends that because the police did not have an arrest warrant, his arrest was unlawful for lack of probable cause, blood was unlawfully taken from him and the blood test results are inadmissible in evidence. The State argues that Wille is collaterally estopped from litigating the probable cause issue in the homicide case, because the issue was impliedly litigated and resolved against Wille at the refusal hearing.

Older cases refer to collateral estoppel but the trend is to use the term "issue preclusion." *In re T.M.S.*, 152 Wis. 2d 345, 354, 448 N.W.2d 282, 286 (Ct. App. 1989). Whether issue preclusion applies is a question of law, which we resolve without deference to the views of the trial court. *Id.*

"When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1980).

680

The general rule set forth in the Restatement has exceptions, one of which is:

> The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or *the adversary has a significantly heavier burden than [it] had in the first action.*

RESTATEMENT (SECOND) OF JUDGMENTS § 28(4) (1980) (emphasis added). Wille is the party against whom preclusion is sought and the State is his "adversary."

■ The State's burden of persuasion at a refusal hearing is substantially less than at a suppression hearing. At the refusal hearing, "the state must only present evidence sufficient to establish an officer's probable cause to believe the person was driving or operating a motor vehicle while under the influence of an intoxicant." *Nordness*, 128 Wis. 2d at 35, 381 N.W.2d at 308. The State need only show that the officer's account is plausible, and the court will not weigh the evidence for and against probable cause or determine the credibility of the witnesses. *Id.* at 36, 381 N.W.2d at 308. Indeed, the court need not even believe the officer's account. It need only be persuaded that the State's account is plausible. Thus, the *Nordness* court held,

> We view the [refusal] hearing as a determination merely of an officer's probable cause, not as a forum to weigh the state's and the defendant's evidence. Because the implied consent statute limits the [refusal] hearing to a determination of probable cause—as opposed to a determination of probable cause to a reasonable certainty—we do not allow the trial court to weigh the evidence between the

parties. The trial court, in terms of the probable cause inquiry, simply must ascertain the plausibility of a police officer's account. *See, e.g., Vigil v. State*, 76 Wis. 2d 133, 144, 250 N.W.2d 378, [384] (1977).[5]

*Nordness*, 128 Wis. 2d at 36, 381 N.W.2d at 308.

Determining probable cause for a warrantless arrest in the context of a suppression motion is another matter. Plausibility is not enough. The trial court takes evidence in support of suppression and against it, and chooses between conflicting versions of the facts. It necessarily determines the credibility of the officers and other witnesses. *State v. Pires*, 55 Wis. 2d 597, 602-03, 201 N.W.2d 153, 156 (1972). The court then finds the historical facts and determines whether probable cause exists on the basis of those facts.

■

Thus, the State's burden of persuasion at a suppression hearing is significantly greater than its burden of persuasion at a refusal hearing under § 343.305(9)(c), STATS. Consequently, Wille is not precluded—collaterally estopped—from relitigating the probable cause issue at the suppression hearing.

### 3. Probable Cause to Arrest

■

The question is whether, at the time Deputy Hoium issued a citation to Wille at the hospital, the circumstances were such that a reasonable law enforcement officer could conclude that Wille probably had committed an offense. *County of Dane v. Sharpee*,

[5] *Vigil v. State*, 76 Wis. 2d 133, 144, 250 N.W.2d 378, 384 (1977), discusses the plausibility requirement in a preliminary hearing.

154 Wis. 2d 515, 518, 453 N.W.2d 508, 510 (Ct. App. 1990). An officer's belief may be partially predicated on hearsay information, and the officer may rely on the collective knowledge of the officer's entire department. *State v. Cheers*, 102 Wis. 2d 367, 386, 388-89, 306 N.W.2d 676, 684-86 (1981). Hoium was an experienced officer. In determining whether probable cause exists, Hoium's conclusions based on his investigative experience may be considered. *State v. DeSmidt*, 155 Wis. 2d 119, 134-35, 454 N.W.2d 780, 787 (1990), *cert. dismissed*, 498 U.S. 1043 (1991); *see also State v. Guy*, 172 Wis. 2d 86, 91-92, 96, 492 N.W.2d 311, 313, 315 (1992), *cert. denied*, 113 S. Ct. 3020 (1993).

An officer in Deputy Hoium's position could reasonably conclude that Wille had probably committed an offense. Hoium smelled intoxicants coming from Wille at the hospital. He knew that a fire fighter had smelled intoxicants on Wille, and that another officer, Check, had smelled intoxicants when near Wille. Hoium knew that Wille had driven his car into the rear end of the Oldsmobile which was parked alongside the highway on the shoulder. Furthermore, upon entering Wille's room at the hospital in Rock County, Hoium heard Wille say that he had "to quit doing this."[6]

---

[6] Wille contends that because Deputy Hoium testified that prior to arriving at the hospital he had decided to arrest Wille, "[t]hat decision was not supported by probable cause . . . ." However, that testimony is irrelevant to our analysis. As we stated above, the issue before us is whether, at the time of the arrest, the circumstances were such that a reasonable law enforcement officer could conclude that Wille had probably committed the offense. *County of Dane v. Sharpee*, 154 Wis. 2d 515, 518, 453 N.W.2d 508, 510 (Ct. App. 1990).

Wille's statement provides evidence of his consciousness of guilt.

In a footnote in *State v. Swanson*, 164 Wis. 2d 437, 453-54 n.6, 475 N.W.2d 148, 155 (1991), our supreme court said:

> Unexplained erratic driving, the odor of alcohol, and the coincidental time of the incident [with bar closing] form the basis for a reasonable suspicion but should not, in the absence of a field sobriety test, constitute probable cause to arrest someone for driving while under the influence of intoxicants. A field sobriety test could be as simple as a finger-to-nose or walk-a-straight-line test. Without such a test, the police officers could not evaluate whether the suspect's physical capacities were sufficiently impaired by the consumption of intoxicants to warrant an arrest.

The *Swanson* footnote does not mean that under all circumstances the officer must first perform a field sobriety test, before deciding whether to arrest for operating a motor vehicle while under the influence of an intoxicant. In *Swanson*, the defendant, who smelled of intoxicants, drove his car onto a sidewalk around bar closing time, nearly hitting a pedestrian. Officer Hoium, however, had stronger grounds for inferring that Wille had operated his car while under the influence of an intoxicant. Not only did Wille smell of intoxicants and hit the rear end of a car parked alongside the highway on the shoulder, at the hospital he stated, "I've got to quit doing this."

We conclude that because Deputy Hoium had probable cause to arrest Wille, the trial court properly denied Wille's motion to suppress the physical evidence

obtained as a result of his warrantless arrest. The judgment and order must be affirmed.

*By the Court.*—Judgment and order affirmed.