STATE of Wisconsin, Plaintiff-Respondent,

v.

Gregg A. PFAFF, Defendant-Appellant.

Court of Appeals

*No. 03–1268–CR. Submitted on briefs December 4, 2003.—*
*Decided January 28, 2004.*

2004 WI App 31

(Also reported in 676 N.W.2d 562.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Rex R. Anderegg,* of *Anderegg & Mutschler, L.L.P.,* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager,* attorney general, and *Sarah K. Larson,* assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. NETTESHEIM, J.   Gregg A. Pfaff appeals from a judgment of conviction for homicide by use of a motor vehicle while intoxicated pursuant to WIS. STAT. § 940.09(1)(a) (2001–02).[1] Pfaff was convicted following a jury trial. On appeal, Pfaff argues that the trial court

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version.

erred by: (1) failing to admit testimony that Pfaff had offered to submit to a polygraph, (2) failing to apply the proper test when ruling on probable cause to arrest, (3) permitting the State to publish to the jury an autopsy photograph of the deceased victim's face, and (4) allowing a State expert witness to confer with the district attorney during a break in the witness' direct examination.

¶ 2. We reject each of Pfaff's arguments and affirm the judgment of conviction.

### BACKGROUND

¶ 3. Since Pfaff does not challenge the sufficiency of the evidence, we recite the facts that support the conviction. On January 25, 2002, Deputy Theo Jordan of the Waukesha County Sheriff's Department received a report of an accident involving two vehicles on southbound I-43. Jordan arrived at the accident scene and observed a person, later identified as Pfaff, standing on the right of the road approximately thirty feet into the ditch area. Pfaff indicated that he was the only one in his vehicle and that he had been driving. Pfaff also informed Jordan that there was another vehicle involved. Jordan located the other vehicle and observed one occupant, later identified as Robert T. Naumann. Jordan was unable to obtain a pulse and Naumann was not breathing.

¶ 4. Jordan observed extensive front-end damage to Pfaff's vehicle and extensive rear-end damage to Naumann's vehicle. Prior to the arrival of medical personnel, Jordan overheard Pfaff make a phone call during which Pfaff stated that he was driving along on the interstate when another vehicle crossed over the center line and hit him head on. Jordan, a certified accident reconstructionist, opined that Naumann's ve-

hicle was stopped on the right shoulder, approximately four feet off the traveled portion of the roadway, when it was struck by Pfaff's pickup truck.

¶ 5. Deputy Brett Metzen of the Waukesha County Sheriff's Department also responded to the accident scene. Jordan told Metzen that Pfaff was receiving emergency medical treatment. During this time, Metzen observed that Pfaff's eyes were wet or "maybe glassy" and he noted an odor of intoxicant coming from Pfaff's person. Metzen was unable to conduct field sobriety testing because Pfaff was strapped on a "long-board." Metzen accompanied Pfaff to the hospital. After arriving at the hospital, Metzen issued Pfaff a citation for operating while intoxicated, read him the Implied Consent form, and requested that Pfaff submit to an evidentiary chemical test of his blood. Pfaff refused to submit to the test. Despite the refusal, a sample of Pfaff's blood was taken at Metzen's direction.

¶ 6. Based on these facts, the State charged Pfaff with homicide by the intoxicated use of a motor vehicle pursuant to Wis. Stat. § 940.09(1)(a). In a separate action, the State additionally charged that Pfaff had improperly refused to submit to a chemical test pursuant to Wis. Stat. § 343.305(9).

¶ 7. At a preliminary hearing, Pfaff was bound over for trial, and the State filed an information again alleging the homicide while intoxicated charge. Pfaff responded with a motion challenging the sufficiency of the evidence to support the bindover and a motion challenging probable cause to support his arrest. In addition, Pfaff requested a hearing on the refusal matter. Both cases were assigned to Judge Patrick C.

Haughney, who directed that Pfaff's motions in the criminal case would be heard in conjunction with the refusal hearing.

¶ 8. At the ensuing hearing, Judge Haughney first addressed Pfaff's motion challenging the bindover. After hearing the arguments of counsel, Judge Haughney denied the motion, ruling that the evidence at the preliminary hearing established a plausible account of Pfaff's commission of a felony. *See State v. Sorenson,* 143 Wis. 2d 226, 251, 421 N.W.2d 77 (1988).

¶ 9. Judge Haughney next turned to Pfaff's motion challenging probable cause to arrest and the refusal question. On these issues, Judge Haughney incorporated by reference the testimony presented at the preliminary hearing and directed both parties to "not repeat any evidence that was put forth in the preliminary hearing transcript . . . ." In support, the judge stated, "To continue just to repeat the same testimony would be a waste of this court's time . . . ." However, the judge did allow Pfaff the opportunity to cross-examine the State's preliminary hearing witnesses. Pfaff objected to this procedure.

¶ 10. The State then presented the testimony of Metzen on the refusal issue. Pfaff also testified. At the conclusion of the hearing, Judge Haughney ruled that probable cause existed to support Pfaff's arrest. In so ruling, the judge relied, in part, on the testimony presented at the preliminary hearing. In addition, the judge found that Pfaff had improperly refused to submit to a chemical test.

¶ 11. Pfaff appealed the refusal case to this court, arguing, "the procedure used by the trial court robbed him of the right to have a tribunal that observes the demeanor of the witnesses in assessing credibility during the State's direct evidence." *State v. Pfaff,* No.

02–1702, unpublished slip op. at ¶ 1 (WI App Dec. 4, 2002). Noting that probable cause was one of the issues at a refusal hearing (*see* WIS. STAT. § 343.305(9)(a)5.a), we agreed with Pfaff. *Pfaff*, No. 02–1702, unpublished slip op. at ¶ 16. However, we upheld Judge Haughney's further finding that Pfaff's refusal was not due to a physical inability to submit to the test. *See* WIS. STAT. § 343.305(9)(a)5.c; *Pfaff*, No. 02–1702, unpublished slip op. at ¶ 23. We reversed and remanded for a new hearing limited to the question of probable cause.

¶ 12.  On remand, Pfaff filed for substitution of Judge Haughney and the refusal case was assigned to Judge James R. Kieffer. At this hearing, Jordan, Metzen and Pfaff testified. Based on this evidence, Judge Kieffer found that there was probable cause to believe that Pfaff was operating under the influence of intoxicants and, as such, there was probable cause to place him under arrest.

¶ 13.  During the pendency of the refusal appeal, Judge Haughney conducted a six-day jury trial on the homicide charge in the instant case. As noted, the jury found Pfaff guilty of causing the death of another person by operation of a vehicle while under the influence of an intoxicant contrary to WIS. STAT. § 940.09(1)(a).

¶ 14.  Pfaff appeals. We will recite additional facts as we discuss the appellate issues.

## DISCUSSION

### Probable Cause to Arrest

¶ 15.  On this appeal, Pfaff raises the same issue he raised in the refusal appeal. He contends that Judge Haughney erred and violated his due process rights by

incorporating and relying upon the testimony from the preliminary hearing when ruling on probable cause to arrest. As our discussion of the history of this case reveals, we previously addressed this same issue in *Pfaff*, No. 02–1702, unpublished slip op., in which we held that the procedure employed by Judge Haughney was error.

■

¶ 16. That raises the threshold question as to whether we are obliged by the "law of the case" doctrine to adhere to our prior decision in this case. The law of the case doctrine holds that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or a later appeal. *State v. Stuart*, 2003 WI 73, ¶ 23, 262 Wis.2d 620, 664 N.W.2d 82. Although we are confident that our ruling in the earlier appeal was correct, we conclude that it does not represent the "law of the case" in this case. The earlier appeal addressed the issue of probable cause under WIS. STAT. § 343.305(9)(a)5.a in a refusal hearing, not the question of probable cause to arrest in a felony case such as this. The State's burden of persuasion at a refusal hearing is substantially less than at a suppression hearing. *State v. Wille*, 185 Wis. 2d 673, 681, 518 N.W.2d 325 (Ct. App. 1994). At a refusal hearing, the issues are limited to whether the officer had probable cause to believe the defendant operated a motor vehicle while intoxicated, whether the officer properly informed the defendant under the implied consent law, and whether the defendant improperly refused the test. Sec. 343.305(9)(a)5. Regarding probable cause, the State need only show that the officer's account is plausible. *Wille*, 185 Wis. 2d at 681. Plausibility may exist even when the trial court may disbelieve the officer's account. *Id.*

¶ 17.   However, when probable cause is challenged in a suppression hearing in a criminal case, plausibility is not enough. *Id*. at 682. Instead, the trial court weighs the evidence, determines credibility and chooses between conflicting versions of the evidence. *Id*. The standard for determining whether probable cause exists rests on the totality of the circumstances and whether the "arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe . . . that the defendant was operating a motor vehicle while under the influence of an intoxicant." *State v. Babbitt*, 188 Wis. 2d 349, 356, 525 N.W.2d 102 (Ct. App. 1994) (citation omitted). Given these differences between the probable cause standard in a refusal case and a criminal case, we conclude that the law of the case does not apply.

¶ 18.   Nonetheless, we hold that Pfaff's concern about Judge Haughney's procedure has been cured by the subsequent remand proceedings before Judge Kieffer. In accord with our remand in the prior appeal, Judge Kieffer conducted a further hearing on the question of probable cause and ruled that Pfaff's arrest was supported by probable cause. True, Judge Kieffer was addressing the question of probable cause under the implied consent law. However, Judge Kieffer's ruling went far beyond the mere requirement of "plausibility" under the implied consent law. To the contrary, Judge Kieffer's ruling addressed probable cause in the fullest sense of that concept as applied to a probable cause challenge in a suppression hearing.

¶ 19.   At the remand proceeding, Jordan, Metzen, and Pfaff testified. Following the arguments of counsel, Judge Kieffer framed the issue as follows:

The only aspect that was reversed and returned to this Court was dealing with the probable cause aspects, as to specifically whether Deputy Metzen had probable cause to believe that Mr. Pfaff was under the influence of intoxicants which then led to his arrest for this particular matter and then led to a subsequent refusal by Mr. Pfaff to take a chemical test of his blood, breath, or urine.

The sole issue then is whether there did exist probable cause to place Mr. Pfaff under the arrest by Deputy Metzen.

Neither side disputes nor does the Court the applicable standard in this case for probable cause . . . . *Probable cause is, in fact, a standard that the Court must look at from the totality of the circumstances, and I must look at what was in the mind of a reasonable police officer at the time of making the arrest and whether there existed sufficient facts and circumstances to warrant the officer to believe that a crime or a traffic matter had, in fact, been violated.*

(Emphasis added.)

¶ 20. Judge Kieffer then went on to find the following facts. Metzen's decision not to perform field sobriety testing was reasonable in light of Pfaff's injuries. Metzen is an experienced officer and has processed many defendants for OWI. Metzen was at the scene of the accident and, at the hospital, Metzen observed Pfaff to have an odor of intoxicants on his breath and red, watery eyes. Metzen had information from Jordan that the accident took place in a distress lane off the roadway and, in his opinion, he believed Pfaff was unable to safely control his vehicle. After making these findings, Judge Kieffer stated, "[T]he Court looks at the totality of all these circumstances, and the Court believes that based upon these particular circumstances,

that there did exist probable cause to believe that Mr. Pfaff was under the influence."

¶ 21.   Notably absent from Judge Kieffer's finding of probable cause is any reference to the lesser "plausibility" standard for probable cause at a refusal hearing. To the contrary, Judge Kieffer applied the higher probable cause standard required by the criminal law when an arrest is challenged.

¶ 22.   We will not overturn the trial court's findings of fact unless clearly erroneous. WIS. STAT. § 805.17(2). Here, the trial court's findings are supported by Metzen's and Jordan's testimony and are not clearly erroneous. Moreover, the testimony offered and the facts found by Judge Kieffer support the court's finding that Metzen's knowledge at the time of Pfaff's arrest would lead a reasonable police officer to believe that Pfaff was operating a motor vehicle while under the influence of an intoxicant. *See Babbitt*, 188 Wis. 2d at 356–57. Despite the fact that the hearing was conducted as an offshoot of Pfaff's refusal appeal, we hold that Judge Kieffer fully and correctly litigated the question of probable cause under the criminal law. We therefore reject Pfaff's contention that he has yet to receive a proper probable cause determination in this case.

### The Polygraph Offer

¶ 23.   At the conclusion of his opening argument, Pfaff's counsel stated that Pfaff had offered to take a polygraph test. The State objected and Judge Haughney excused the jury for the day. Pfaff then made an offer of proof, testifying that he had offered to take a polygraph regarding his claim that he had observed the headlights of an oncoming vehicle just prior to hitting Naumann's

vehicle. Pfaff additionally testified that he had taken and passed the test and that at the time he took the test he believed the results of the test were admissible at trial. On cross-examination, Pfaff testified that the polygraph test "was something that my counsel wanted me to take" but that he "voluntarily submitted to it." This information concerning the test was not disclosed to the State until the first day of trial.

¶ 24. Following arguments by counsel, Judge Haughney excluded Pfaff's polygraph testimony. The judge found that "there was no offer to take a polygraph in this case . . . . Nowhere does this record contain that there was an offer to the [S]tate to have a polygraph test taken." The court additionally found incredible Pfaff's testimony that he was under the impression that the State would be informed if he failed the test.

■

¶ 25. Pfaff argues that Judge Haughney erred by excluding testimony that he had agreed to take a polygraph test. A trial court's decision to admit or exclude evidence is a discretionary determination and will not be upset on appeal if it has "a reasonable basis" and was made "in accordance with accepted legal standards and in accordance with the facts of record." *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983) (citation omitted).

■

¶ 26. While a polygraph test result is inadmissible in Wisconsin, *see State v. Dean*, 103 Wis. 2d 228, 279, 307 N.W.2d 628 (1981), an offer to take a polygraph test is relevant to an assessment of the offeror's credibility and may be admissible for that purpose. *State v. Hoffman*, 106 Wis. 2d 185, 217, 316 N.W.2d 143 (Ct. App. 1982). An offer to take a polygraph test is relevant to the state of mind of the person making the offer—so

800

long as the person making the offer believes that the test or analysis is possible, accurate, and admissible. *State v. Santana-Lopez*, 2000 WI App 122, ¶ 4, 237 Wis. 2d 332, 613 N.W.2d 918.

¶ 27.  In *Santana-Lopez*, the defendant told the police that he would take a polygraph and DNA tests. *Id.*, ¶ 2. The trial court excluded this evidence. We reversed and remanded for the trial court to reconsider the ruling under the following guidelines:

> [A]n offer to take a polygraph test and an offer to undergo a DNA analysis are relevant to the state of mind of the person making the offer—so long as the person making the offer believes that the test or analysis is possible, accurate, and admissible. Simply put, an offer to undergo DNA testing, like an offer to take a polygraph examination, may reflect a consciousness of innocence.
>
> As with evidence bearing directly on consciousness of guilt, *see, e.g., State v. Schirmang*, 210 Wis. 2d 324, 331–32, 565 N.W.2d 225, 228 (Ct. App. 1997) (refusal to submit to mandatory blood-alcohol testing relevant to defendant's consciousness of guilt), evidence bearing directly on consciousness of innocence is also relevant, *see Hoffman*, 106 Wis. 2d at 217, 316 N.W.2d at 160.

*Santana-Lopez*, 237 Wis. 2d 332, ¶¶ 4–5 (citations omitted). Thus, a defendant's offer to take a polygraph test is admissible because it may reflect a consciousness of innocence.

¶ 28.  The threshold question in this case is whether Pfaff's agreement to submit to a polygraph test *at the request of his attorney* constitutes an "offer" to take a polygraph test. We addressed this issue in the civil case of *Neumann v. Neumann*, 2001 WI App 61,

801

¶ 64, 242 Wis. 2d 205, 626 N.W.2d 821.[2] There, the appellant argued that the trial court erred in excluding evidence that he had offered to take a polygraph test. In rejecting this argument, we stated,

> [A]s Neumann acknowledged at oral argument, he did not offer to take a polygraph examination. Instead, law enforcement asked him to take the examination and he agreed. Neumann contends that even though law enforcement suggested the test, his willingness to take the test should still be admissible under the same reasoning applied in *Hoffman.*

*Neumann,* 242 Wis. 2d 205, ¶ 64. Thus, an agreement to submit to a polygraph test at the suggestion or request of another is not an offer within the meaning of *Hoffman.*

■■

¶ 29.  We see no reason to create an exception to this rule where, as here, the request or suggestion for the polygraph test comes from the defendant's attorney. When the offer to take a polygraph test originates with the defendant and is accompanied by the defendant's belief that the test result or analysis is "possible, accurate, and admissible," it is probative as "consciousness of [the defendant's] innocence." *Santana-Lopez,* 237 Wis. 2d 332, ¶¶ 4–5. The converse does not hold when the offer to take the test is the result of an attorney's suggestion or direction. Any competent defense attorney practicing in Wisconsin well knows that polygraph test results are inadmissible in this state,

[2] In *Neumann v. Neumann,* 2001 WI App 61, 242 Wis. 2d 205, ¶¶ 59–62, 626 N.W.2d 821, we held that the rules governing polygraph testing and results are the same in criminal and civil cases.

and presumably the attorney would share that knowledge with the client when suggesting the test.

¶ 30.   Relevant evidence is evidence that makes the existence of a consequential fact more or less probable than it would be without the evidence. WIS. STAT. § 904.01. Moreover, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. WIS. STAT. § 904.03. We hold that when the defense attorney plants the seed for the idea of offering to take a polygraph test, the probative value of such an offer as "consciousness of innocence" is diminished to a level where it no longer assists on the question of guilt or innocence. Instead, it takes the jury into the realm of speculation and likely confusion.

¶ 31.   We conclude that Pfaff's agreement to submit to a polygraph test at the request of his attorney was not an "offer" to take a polygraph test within the meaning of the established case law. We uphold Judge Haughney's ruling excluding Pfaff's proffered testimony.

*Admission of Autopsy Photograph*

¶ 32.   On the fourth day of trial, during the State's direct examination of the medical examiner, the State sought to introduce a photograph of Naumann prior to his death. Pfaff objected and the trial court denied the admission of the photograph because it had not been provided to Pfaff during discovery prior to trial. The State then sought to introduce an autopsy photograph of Naumann which had been provided to Pfaff during

discovery. Pfaff objected on grounds that he had never disputed Naumann's identity or death. Pfaff argued that the photograph had no probative value and was inflammatory and cumulative. The State responded that it had not entered into any stipulation regarding Naumann's identity, and that the photograph was necessary to fulfill its burden of proving this element of the offense.

¶ 33.   Judge Haughney permitted the State to use the photograph, stating:

> The court will allow the state to utilize Exhibit 44. In terms of the type of photograph, the court finds nothing in there that is unduly inflammatory towards the jury. The court disagrees with counsel's characterization in terms of what stipulations to the Autopsy Protocol include. The state—this is an appropriate line of questioning in a homicide case. As there's nothing inflammatory about this, the court also finds that this photograph is probative. It may be utilized.

Pursuant to WIS. STAT. § 904.03, Pfaff argues that Judge Haughney erred in admitting the photograph because its probative value was outweighed by its prejudicial effect. Pfaff further contends that the photograph represents the "needless presentation of cumulative evidence."

¶ 34.   Whether photographs are to be admitted is a matter within the trial court's discretion. *State v. Lindvig*, 205 Wis. 2d 100, 108, 555 N.W.2d 197 (Ct. App. 1996). We will not disturb the court's discretionary decision "unless it is wholly unreasonable or the only purpose of the photographs is to inflame and prejudice the jury." *Id.* (citing *State v. Hagen*, 181 Wis. 2d 934,

946, 512 N.W.2d 180 (Ct. App. 1994)).[3] "Photographs should be admitted if they help the jury gain a better understanding of material facts and should be excluded if they are not 'substantially necessary' to show material facts and will tend to create sympathy or indignation or direct the jury's attention to improper considerations." *Ellsworth v. Schelbrock*, 229 Wis. 2d 542, 559, 600 N.W.2d 247 (Ct. App. 1999) (citing *Sage v. State*, 87 Wis. 2d 783, 788, 275 N.W.2d 705 (1979)).

■■■

¶ 35.    Pfaff argues that the evidence was cumulative because he did not dispute Naumann's identity. However, *Lindvig* rejected the argument that a defendant's willingness to stipulate to an element could render photographs inadmissible. *Lindvig* makes clear that even when a party is willing to stipulate to an element, "[e]vidence is always admissible to prove an element of the charged crime even if the defendant does not dispute it at trial." *Lindvig*, 205 Wis. 2d at 108 (citation omitted).

---

[3] The rationale underlying the discretion afforded the trial court on this issue was discussed in *Hayzes v. State*, 64 Wis. 2d 189, 200, 218 N.W.2d 717 (1974):

> While reasonable persons looking at the photographs as a part of a record may have differing opinions in regard to whether they were cumulative, inflammatory, or prejudicial, the judgment is essentially one to be exercised by the trial judge. He [or she], better than anyone else, in light of the evidence, can make the determination that the photographs will assist the jury in a rational and dispassionate determination of the facts. Where a trial judge has applied the appropriate discretionary standards, this court will not reverse his [or her] decision unless it appears that, in light of the record as a whole, his [or her] conclusion was wholly unreasonable or if the circumstances indicate that the only purpose of the photographs was to inflame or prejudice the jury.

¶ 36. Here, the State was required to prove the following elements of homicide by intoxicated use of a motor vehicle under WIS. STAT. § 940.09(1)(a): (1) Pfaff operated a vehicle, (2) Pfaff's operation of the vehicle caused the death of Robert T. Naumann, and (3) Pfaff was under the influence of an intoxicant at the time he operated the vehicle. WIS JI—CRIMINAL 1185. Therefore, Pfaff's photograph was admissible as proof of an element of the charged crime and was substantially necessary to show a material facts regarding Naumann's identity and death—namely, that Naumann was the victim of the offense. *See Lindvig*, 205 Wis. 2d at 108; *Ellsworth*, 229 Wis. 2d at 559. Further, the record reflects that prior to admitting the photo, the trial court properly exercised its discretion in weighing the potential prejudice to Pfaff against the State's burden to prove every element of the charged offense.

¶ 37. We conclude that the trial court's decision to admit an autopsy photograph of Naumann was not wholly unreasonable. We further conclude that the purpose of the photograph was not to inflame or prejudice the jury, and Pfaff concedes that the photo is not "particularly graphic or gory in detail."[4] The State was entitled to present the evidence as proof of an essential element of the charged crime. We therefore uphold the admission of the autopsy photograph.

### Permitting State's Witness to Confer with District Attorney

¶ 38. On the first day of trial, prior to voir dire, Judge Haughney ordered that the witnesses would be sequestered but would be "able to discuss their testi-

---

[4] We have examined the photo and we agree.

mony with lawyers from either side." On the second day of trial, Pfaff was in the middle of his cross-examination of Metzen when Judge Haughney called for a short recess. Pfaff requested that Judge Haughney prohibit Metzen from conferring with the district attorney or any other person during the recess. Judge Haughney granted the request. When Pfaff inquired about extending the ruling to other witnesses, Judge Haughney replied:

> There is a sequestration order in effect, which I don't need to review at this particular time. What you have done ... is added a new provision to the prior provision that I had that all witnesses could confer with attorneys. That's been the change. I do not intend to review the entire order on every single break for every single witness that we have.[5]

¶ 39. The State's next witness was James Sobek, an accident reconstruction specialist. During his direct examination by the State, Judge Haughney ordered a brief recess during which the district attorney conferred with Sobek. Pfaff contends that Sobek's testimony changed to his detriment following Sobek's discussion with the district attorney during the recess.

¶ 40. Pfaff argues that Judge Haughney erred by refusing to extend the bar against Metzen conferring with the lawyers to all of the future witnesses in the case. We do not read Judge Haughney's language as all that encompassing or absolute. Unlike with Metzen,

---

[5] At the end of the second day of trial and the close of Pfaff's cross-examination of Metzen, the trial court, over Pfaff's objection, removed its prohibition and permitted Metzen to confer with attorneys from either side during the overnight break. Thus, Judge Haughney reinstated his original ruling as to all witnesses—they were sequestered but were free to discuss their testimony with the lawyers.

Pfaff's request was not made in regard to any specific witness. In that context, Judge Haughney indicated his satisfaction with the standing sequestration order, and that the court did not intend to review the order "on every single break for every single witness." Notably, this language did not preclude Pfaff from raising the issue with regard to a particular future witness should the need arise.[6]

¶ 41.    Thus, if Pfaff perceived a need to bar consultation between the district attorney and Sobek during the break in Sobek's testimony, he should have asked for that *particular* relief with regard to that *particular* witness. Judge Haughney had already indicated his readiness to alter the standing order during Metzen's testimony. However, Pfaff never made this request of Judge Haughney at the time of the break in Sobek's testimony.[7] We hold that Pfaff has waived this issue. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980).[8]

---

[6] We take note of WIS. STAT. § 906.11(1) which vests the trial judge with reasonable control over the mode and order of interrogating witnesses and the presentation of evidence.

[7] We also note that Pfaff was aware of the perceived change in Sobek's testimony during his cross-examination when he asked whether Sobek discussed his testimony with the district attorney during the recess and implied that the discussion had resulted in a change in Sobek's testimony. Despite this knowledge, Pfaff did not seek any other form of relief such as a request that the testimony be stricken.

[8] Based on our determination that Pfaff waived his right to challenge the trial court's ruling, we need not address the parties' "harmless error" arguments. Nor do we address the State's arguments pertaining to whether Sobek violated the court's sequestration order. Pfaff does not allege that Sobek

## CONCLUSION

¶ 42. We hold that Judge Kieffer applied the appropriate test in determining probable cause to arrest, rendering Pfaff's probable cause argument moot. We also hold that Pfaff's acquiescence to his attorney's request that he submit to polygraph testing did not constitute an admissible "offer" under existing law. We further hold that Judge Haughney properly exercised his discretion by permitting the State to introduce an autopsy photograph as proof of an essential element of the charged crime. Finally, we conclude that Judge Haughney's refusal to alter the standing witness sequestration order did not bar Pfaff from seeking relief from the order with regard to a particular witness. Since Pfaff did not seek such relief, we hold that he has waived this issue.

¶ 43. We affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

___

violated the trial court's order when he conferred with the district attorney. Rather, Pfaff contends that the trial court's order at the conclusion of Metzen's testimony was a blanket order precluding him from seeking a sequestration order as to all future witnesses. As our discussion reveals, Pfaff over reads Judge Haughney's remarks.