**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 25, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP755**

Cir. Ct. No.  **2023TR124**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT IV**

IN THE MATTER OF THE REFUSAL OF
JACOB KARL SCHINDLER:

STATE OF WISCONSIN,

 PLAINTIFF-RESPONDENT,

 V.

JACOB KARL SCHINDLER,

 DEFENDANT-APPELLANT.

   APPEAL from an order of the circuit court for Jefferson County: BENNETT J. BRANTMEIER, Judge.  *Affirmed*.

¶1    TAYLOR, J.[1] Jacob Karl Schindler appeals an order of the Jefferson County Circuit Court revoking his operating privileges based on his refusal to submit to chemical testing of his blood pursuant to Wisconsin's implied consent law. On appeal, Schindler argues that his operating privileges should not have been revoked because the arresting deputy lacked probable cause to arrest him for operating a motor vehicle while under the influence of alcohol. I conclude that the deputy had probable cause to believe that Schindler had operated a motor vehicle while under the influence of alcohol. Accordingly, I affirm the decision of the circuit court revoking Schindler's operating privileges.

## BACKGROUND

¶2    Around 11:30 p.m. on January 7, 2023, Deputy Ehrin Eisenberg of the Jefferson County Sheriff's Department was dispatched to investigate a report of a vehicle that had run off the road. When Eisenberg arrived, he observed a vehicle 50 to 75 feet down a ravine on the side of the road. Based on the location of the vehicle, Eisenberg believed that the vehicle ran through a stop sign at a three-way "T-intersection" before driving off the road and down the ravine.

¶3    When Eisenberg exited his squad car, he heard "engines revving" from the vehicle, as though the driver was spinning the vehicle's wheels in the mud. With another deputy, Eisenberg walked to the vehicle and made contact with the driver, who he later learned was Schindler. Eisenberg smelled alcohol coming from the vehicle and observed that Schindler's eyes were bloodshot and

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

glassy and that his speech was slurred. A dog was the only other occupant in the vehicle.

¶4 Eisenberg repeatedly asked Schindler to turn off the vehicle, and Schindler eventually complied. Eisenberg then asked Schindler to step out of the vehicle, but Schindler refused to do so. Eisenberg also asked Schindler whether he had consumed any alcohol, but Schindler stated that he refused to answer any questions. Eisenberg opened the door to the vehicle and again asked Schindler to step out. Schindler again refused. Schindler then began reaching for a pen, but Eisenberg grabbed Schindler's hand and pulled him from the vehicle before he could do so.

¶5 With the other deputy, Eisenberg assisted Schindler to his feet and held him against Schindler's vehicle. Eisenberg asked Schindler to place his hands behind his back, but Schindler refused to do so. Eisenberg managed to handcuff one of Schindler's hands, but Schindler was grabbing the top rail of the vehicle with his other hand and would not allow Eisenberg to handcuff that hand. Eisenberg delivered several knee strikes to the back of Schindler's leg and was then able to handcuff both of Schindler's hands behind his back. During this struggle, Eisenberg called for additional backup support.

¶6 Once handcuffed, Eisenberg held Schindler against Schindler's car until the backup officer arrived a few minutes later, and then walked Schindler to Eisenberg's squad car and placed him in the vehicle while he was still handcuffed. Eisenberg did not tell Schindler that he was under arrest. According to Eisenberg, Schindler was being detained at that point as part of the officers' ongoing investigation and due to his uncooperative behavior.

¶7     While Schindler was sitting in the squad car, one of the other officers at the scene asked Schindler to perform standardized field sobriety tests, and Schindler refused.  Schindler was not asked to conduct a preliminary breath test.  After Schindler refused the field sobriety tests, Eisenberg informed Schindler that he was under arrest for operating a vehicle while intoxicated.  At some point, Eisenberg learned that Schindler had three prior convictions for operating a vehicle while intoxicated (OWI) or having a prohibited alcohol concentration (PAC).  As a result, Schindler was legally prohibited from operating a vehicle with a PAC greater than 0.02.  However, it is not clear from the record whether Eisenberg learned of Schindler's prior convictions before he told Schindler that he was being arrested.

¶8     Eisenberg then read Schindler the "Informing the Accused" form and requested that Schindler submit to an evidentiary chemical test of his blood.  Schindler refused.  At that point, Eisenberg obtained a search warrant for a blood draw and transported Schindler to a hospital for the draw.  The results of the blood test showed that Schindler had a blood alcohol concentration of 0.234.

¶9     Schindler was charged with refusing to submit to a chemical test contrary to WIS. STAT. § 343.305(9).[2]  At the refusal hearing, Eisenberg testified about the events of Schindler's arrest as set forth above.  The circuit court determined that Eisenberg had probable cause to believe that Schindler was operating a motor vehicle while under the influence of alcohol because Schindler

---

[2] Schindler was also charged with several other offenses, including operating a motor vehicle while under the influence of an intoxicant contrary to WIS. STAT. § 346.63(1)(a) and operating a motor vehicle with a prohibited alcohol concentration contrary to § 346.63(1)(b), both as fourth offenses.  This appeal only concerns the refusal charge.

smelled of alcohol, had slurred speech, had bloodshot and glassy eyes, and there was a one-car accident. The court also found that Eisenberg properly read the Informing the Accused form to Schindler and that Schindler refused to submit to testing. As a result, the court entered an order revoking Schindler's operating privileges. Schindler appeals.[3]

## DISCUSSION

### I. Wisconsin's Implied Consent Statute.

¶10  WISCONSIN STAT. § 343.305 provides that any person who drives or operates a motor vehicle on a public roadway in Wisconsin is deemed to have given their "implied consent" to chemical testing of a sample of their blood, breath, or urine if they are arrested for an OWI-related offense.[4] Sec. 343.305(2), (3)(a). A law enforcement officer who arrests a driver for an OWI-related offense

---

[3] The notice of appeal says that Schindler is appealing a "judgment of conviction." However, there is no "judgment of conviction" in the record, only a "conviction status report." We will therefore refer to the court's revocation as an "order."

[4] The language in WIS. STAT. § 343.305 has been found to be unconstitutional to the extent it allows a statutory exception for a warrantless blood draw and for criminal penalties to be imposed on individuals who exercise their constitutional right to refuse a warrantless blood draw. *See State v. Forrett*, 2022 WI 37, ¶14, 401 Wis. 2d 678, 974 N.W.2d 422 ("We therefore hold that the OWI statutes are facially unconstitutional to the extent they count a prior, stand-alone revocation resulting from a refusal to submit to a warrantless blood draw as an offense for the purpose of increasing the criminal penalty."); *State v. Prado*, 2021 WI 64, ¶54, 397 Wis. 2d 719, 960 N.W.2d 869 ("[W]e conclude that the incapacitated driver provision is unconstitutional beyond a reasonable doubt. The provision's 'deemed' consent authorizes warrantless searches that do not fulfill any recognized exception to the warrant requirement and thus the provision violates the Fourth Amendment's proscription of unreasonable searches."); and *Birchfield v. North Dakota*, 579 U.S. 438, 477 (2016) ("[W]e conclude that motorists cannot be deemed to have [impliedly] consented to submit to a blood test on pain of committing a criminal offense."). None of these situations are present here.

and seeks chemical testing pursuant to the implied consent law is required to read the Informing the Accused script to the driver. Sec. 343.305(4).[5]

¶11 If the person refuses to submit to chemical testing, the person is informed that the State intends to immediately revoke their operating privileges and that they may request a refusal hearing in court. WIS. STAT. § 343.305(9)(a). The issues that a defendant may raise during a refusal hearing are limited by statute to those set forth in § 343.305(9)(a)5. One of the issues that may be raised is "[w]hether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol … and whether the

---

[5] The exact statutory script that must be read is:

> You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs, or both, or you are the operator of a vehicle that was involved in an accident that caused the death of, great bodily harm to, or substantial bodily harm to a person, or you are suspected of driving or being on duty time with respect to a commercial motor vehicle after consuming an intoxicating beverage.

> This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. If any test shows more alcohol in your system than the law permits while driving, your operating privilege will be suspended. If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court.

> If you take all the requested tests, you may choose to take further tests. You may take the alternative test that this law enforcement agency provides free of charge. You also may have a test conducted by a qualified person of your choice at your expense. You, however, will have to make your own arrangements for that test.

> If you have a commercial driver license or were operating a commercial motor vehicle, other consequences may result from positive test results or from refusing testing, such as being placed out of service or disqualified.

WIS. STAT. § 343.305(4).

person was lawfully placed under arrest for violation of [an OWI-related statute]." Sec. 343.305(9)(a)5.a.

¶12    A circuit court's "[f]indings of fact shall not be set aside unless clearly erroneous." WIS. STAT. § 805.17(2).  Here, the parties do not dispute the "pertinent" facts that were set forth at the refusal hearing through Eisenberg's testimony.  For this reason, I only address the legal question of whether there was probable cause to arrest Schindler, which I review independently.  *See State v. Woods*, 117 Wis. 2d 701, 710, 345 N.W.2d 457 (1984) ("If the historical facts are undisputed, probable cause for an arrest is a question of law that is subject to independent review on appeal, without deference to the trial court's conclusion.").

## II.  Eisenberg Had Probable Cause to Believe Schindler Was Operating a Vehicle Under the Influence of Alcohol.

¶13    On appeal, Schindler argues that the circuit court erred in revoking his driving privileges for refusing to permit chemical testing of his blood because Eisenberg did not have probable cause at the time of arrest to believe that Schindler had been operating a motor vehicle under the influence of alcohol. Schindler contends that his arrest occurred when he was placed in Eisenberg's squad car while handcuffed and, as a result, that his refusal to perform field sobriety testing may not be considered in determining whether there was probable cause to believe that he had been driving under the influence of alcohol.  The State responds that Schindler was not arrested until after he refused to perform field sobriety testing.  According to the State, Schindler had been handcuffed and placed in Eisenberg's squad car due to Schindler's failure to cooperate in the deputy's investigation.

¶14    I begin by addressing the timing of Schindler's arrest.

7

## A. Timing of the Arrest.

¶15     In Wisconsin, "the test for whether a person has been arrested is whether a 'reasonable person in the defendant's position would have considered himself or herself to be 'in custody,' given the degree of restraint under the circumstances.'" ***State v. Blatterman***, 2015 WI 46, ¶30, 362 Wis. 2d 138, 864 N.W.2d 26 (citation omitted). "The circumstances of the situation including what has been communicated by the police officers, either by their words or actions, shall be controlling under the objective test." ***Id.*** (citation omitted).

¶16     "[A] police officer may, under certain circumstances, temporarily detain a person for purposes of investigating possible criminal behavior even though there is not probable cause to make an arrest." ***Id.***, ¶18 (citing ***Terry v. Ohio***, 392 U.S. 1, 22 (1968)); WIS. STAT. § 968.24. A temporary investigative detention "requires a reasonable suspicion, grounded in 'specific and articulable facts,' and reasonable inferences from those facts, that an individual was engaging in illegal activity." ***State v. Pickens***, 2010 WI App 5, ¶14, 323 Wis. 2d 226, 779 N.W.2d 1 (2009) (citing ***Terry***, 392 U.S. at 21). Additionally, the "investigative means" used in this temporary detention must be "the least intrusive means reasonably available to verify or dispel the officer's suspicion" and may last "no longer than is necessary to effectuate the purpose of the stop." ***Id.***, ¶27 (citation omitted).

¶17     When temporarily detaining a person, an officer may use handcuffs and place the person in a squad car without rendering the temporary detention unreasonable or transforming the detention into an arrest. ***Blatterman***, 362 Wis. 2d 138, ¶¶31-32. However, "such measures generally are reasonable only when

particular facts justify the measure for officer safety or similar concerns." ***Pickens***, 323 Wis. 2d 226, ¶32.

¶18     Here, Schindler argues that he was placed under arrest when he was handcuffed and put in Eisenberg's squad car because a reasonable person would believe they were in custody at that point.  I disagree.  As the State points out, Eisenberg testified that Schindler was not cooperating with the investigation and had to be asked multiple times to turn off the engine and step out of his vehicle.  When officers opened the door to his vehicle and again asked him to step out, Schindler unexpectedly reached out to grab a pen.  Eisenberg then pulled Schindler out of the vehicle and repeatedly asked him to put his hands behind his back, but he refused and would not allow Eisenberg to put his hands in handcuffs.  According to Eisenberg, physical force was needed to secure both of Schindler's hands in handcuffs, and Schindler's lack of cooperation was hindering his investigation.  Hence, Eisenberg testified that Schindler was placed in handcuffs and put in his squad car because of Schindler's lack of cooperation, not because he was under arrest.  Eisenberg testified that if Schindler had agreed to perform the field sobriety tests, then the officers would have removed the handcuffs.

¶19     This testimony from Eisenberg demonstrates that the use of handcuffs and placing Schindler in the squad car were reasonable measures to prevent Schindler from interfering with the officers' investigation.  This testimony also demonstrates that the officers were reasonably concerned for their safety due to Schindler's resistive and unpredictable behavior.  Schindler does not challenge the lawfulness of this temporary investigative detention, including whether the detention was justified by reasonable suspicion or whether the investigative means employed by the officers were reasonable.  Therefore, I conclude that Schindler was not arrested when he was put in handcuffs and placed in Eisenberg's squad

car. Instead, Schindler was arrested when Eisenberg told him that he was under arrest after Schindler refused to perform field sobriety tests.

### B. Probable Cause.

¶20 At a refusal hearing, "[p]robable cause, although not easily reducible to a stringent, mechanical definition, generally refers to 'that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime.'" *State v. Nordness*, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986) (citations omitted). In the context of a refusal hearing, "[p]robable cause exists where the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe … that the defendant was operating a motor vehicle while under the influence of an intoxicant." *Id.* This court is not bound by an officer's subjective assessment or motivation. *State v. Kasian*, 207 Wis. 2d 611, 621, 558 N.W.2d 687 (Ct. App. 1996).

¶21 In assessing whether an officer had probable cause, the State's burden of persuasion is "substantially less than at a suppression hearing." *State v. Pfaff*, 2004 WI App 31, ¶16, 269 Wis. 2d 786, 676 N.W.2d 562. "The State need only show that the officer's account is plausible, and the court will not weigh the evidence for and against probable cause or determine the credibility of the witnesses." *State v. Wille*, 185 Wis. 2d 673, 681, 518 N.W.2d 325 (Ct. App. 1994). "Indeed, the court need not even believe the officer's account. It need only be persuaded that the State's account is plausible." *Id.*

¶22 Here, the information available to Eisenberg at the time of arrest would lead a reasonable police officer to believe that Schindler had been driving under the influence of alcohol. Eisenberg was dispatched around 11:30 p.m. to

investigate a report of a vehicle that had run off the road and, when he arrived at the scene, he observed that the vehicle appeared to have run through a stop sign at a "T-intersection" and traveled 50 to 75 feet off the road. The nature of the accident and the late hour support a determination of probable cause. *See **Kasian***, 207 Wis. 2d at 622 (appearance of a one-vehicle accident supported probable cause); *State v. Lange*, 2009 WI 49, ¶32, 317 Wis. 2d 383, 766 N.W.2d 551 (time of night supports probable cause). Eisenberg testified that there was an odor of intoxicants coming from the vehicle, Schindler had glassy and bloodshot eyes, and Schindler had slurred speech. *See State v. Kennedy*, 2014 WI 132, ¶22, 359 Wis. 2d 454, 856 N.W.2d 834 ("[F]actors sufficient to support a finding of probable cause have included bloodshot eyes, an odor of intoxicants, and slurred speech."). Finally, Schindler refused to follow the officers' orders and refused to perform field sobriety tests. *See **Blatterman***, 362 Wis. 2d 138, ¶37-38 (refusal to follow orders supports probable cause); *State v. Babbitt*, 188 Wis. 2d 349, 359-60, 525 N.W.2d 102 (Ct. App. 1994) (refusal to submit to field sobriety tests supports probable cause). When examining the totality of the circumstances in Eisenberg's knowledge at the time of arrest, I conclude that a reasonable police officer would believe that Schindler had operated under the influence of alcohol or with a PAC.[6]

¶23     Schindler argues that the information available to Eisenberg at the time of arrest did not reasonably demonstrate that Schindler had operated a vehicle

---

[6] Prior OWI convictions may also support probable cause, especially where the applicable PAC threshold is reduced to 0.02. *See State v. Blatterman*, 2015 WI 46, ¶36, 362 Wis. 2d 138, 864 N.W.2d 26; WIS. STAT. § 340.01(46m)(c) (reducing prohibited alcohol concentration standard to 0.02 if the person has three or more prior convictions, suspensions or revocations). Here, Eisenberg testified Schindler had three prior OWI convictions and was subject to a 0.02 PAC threshold. However, it is unclear from the record whether Eisenberg knew that information before he arrested Schindler. As a result, I do not consider that information in my analysis.

while impaired. First, Schindler points out that Eisenberg did not observe any erratic driving and did not observe any indications of damage to the vehicle. Schindler also points to Eisenberg's acknowledgment that he never observed any indications that Schindler's balance or coordination were impaired. However, an officer does not need to personally observe erratic driving or impaired motor functions to reasonably believe that a driver operated a vehicle while impaired. *See Kasian*, 207 Wis. 2d at 622 (holding that an officer had probable cause to arrest where the officer "came upon the scene of a one-vehicle accident," observed an injured man lying next to the vehicle, and observed a strong odor of intoxicants and slurred speech).

¶24 Next, Schindler points to Eisenberg's acknowledgement that Schindler's slurred speech and the odor of alcohol coming from his vehicle were not definitive proof of impaired driving. However, as explained, slurred speech and the odor of alcohol are valid factors for consideration in the totality of circumstances an officer may consider in assessing probable cause. *See Kennedy*, 359 Wis. 2d 454, ¶22. Additionally, officers are not obligated to rule out innocent explanations when they observe indicia of an intoxicated driver. *State v. Tullberg*, 2014 WI 134, ¶35, 359 Wis. 2d 421, 857 N.W.2d 120 (holding that officers may consider indicia of intoxication as a basis for probable cause, even though such indicia may have an innocent explanation).

¶25 Finally, Schindler argues that he never admitted to consuming alcohol or otherwise confessed his guilt. However, as this court has recognized, a defendant's refusal to submit to field sobriety tests is "some evidence of consciousness of guilt" and may be considered as a basis for probable cause. *Babbitt*, 188 Wis. 2d at 360. Here, Eisenberg testified that Schindler did not cooperate with the officers' orders and refused to perform field sobriety tests.

Eisenberg was permitted to consider this refusal as evidence of Schindler's consciousness of guilt.

¶26 In sum, the information available to Eisenberg at the time of Schindler's arrest would lead a reasonable officer to believe that Schindler had operated a vehicle while under the influence of alcohol. Therefore, I conclude that the circuit court properly revoked Schindler's driving privileges for refusing to submit to chemical testing.

## CONCLUSION

¶27 For the foregoing reasons, the order of the circuit court is affirmed.

*By the Court.—*Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.