STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Paul Lee SWANSON, Defendant-Respondent.

Supreme Court

*No. 90–0747–CR. Oral argument September 6, 1991.—Decided October 14, 1991.*

(Also reported in 475 N.W.2d 148.)

For the plaintiff-appellant-petitioner the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-respondent there was a brief and oral argument by *John D. Lubarsky,* assistant state public defender.

CALLOW, WILLIAM G., J.   This is a review under sec. (Rule) 809.62, Stats., of an unpublished decision of the court of appeals, which affirmed an order of the circuit court of Pierce county, Judge Robert W. Wing. The circuit court issued an order dismissing the criminal charges of felony escape under sec. 946.42(3)(a),

Stats.,[1] and possession of a controlled substance under sec. 161.41(3), Stats.,[2] against the defendant-respondent Paul Lee Swanson (Swanson) on the ground that the search and arrest pursuant thereto of Swanson were both illegal, and thus, Swanson was not in "legal custody" at the time of the search nor when he eluded police. The court of appeals affirmed the dismissal order of the circuit court.

Two issues are raised on this appeal. First, the plaintiff-appellant State of Wisconsin (State) argues that the search of Swanson was justified because he was under arrest for fourth amendment purposes at the time of the search. Second, the State argues that, even if Swanson was not under arrest at the time of the search, the search was justified under the fourth amendment[3] as

---

[1]Section 946.42(3), Stats., provides, in part:

A person in custody who intentionally escapes from custody under any of the following circumstances is guilty of a Class D felony:
   (a)   Pursuant to a legal arrest for, lawfully charged with or convicted of or sentenced for a crime.

[2]Section 161.41(3), Stats., provides, in part:

. . .[I]t is unlawful for any person to possess or attempt to possess a controlled substance, other than a controlled substance classified in schedule I or II that is a narcotic drug, unless . . . pursuant to a valid prescription or order of, a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter. Any person who violates this subsection is guilty of a misdemeanor, punishable under s. 939.61.

[3]The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

incident to a formal arrest that was supported by probable cause, even though the search preceded the arrest.

The relevant facts follow. At approximately 2:00 a.m. on December 31, 1989, city of Prescott police officers Rosenow and Toston observed an automobile drive onto the sidewalk in front of the No-Name Saloon. The automobile nearly hit at least one pedestrian. Officer Rosenow approached the vehicle as Swanson exited the driver's seat. He then asked Swanson to produce a driver's license. Swanson stated that he did not have his license with him, but could furnish a Minnesota state identification card.

As Swanson spoke, Officer Rosenow detected an odor of intoxicants on Swanson's breath and directed him over to the squad car for field sobriety tests. However, Rosenow testified that Swanson had no difficulty standing and did not have slurred or impaired speech. When Swanson arrived at the squad car, Officer Toston performed a pat down search of Swanson. Apparently, Officer Toston contemplated having Swanson take the field sobriety test inside the squad car. For the officers' own safety, departmental policy requires the officer to perform a pat down search prior to placing anyone in the squad car. During the search, Officer Toston discovered a bag of marijuana in Swanson's pocket and confiscated it.

The field sobriety tests were never taken because the officers then received a request for backup assistance at a domestic disturbance.[4] The officers immediately

---

[4]The State contends that the backup assistance call arrived before or contemporaneous to the search. The only testimony offered contradicts this assertion. Officer Rosenow's testimony at the preliminary hearing clearly indicates that the search preceded the call for backup assistance. The relevant portion of his testimony is reproduced below.

arrested Swanson, handcuffed him, and placed him in the back of the squad car. They then took Swanson along with them to the domestic disturbance, where Swanson escaped when left alone. He was apprehended later that evening.

■

Swanson was charged with felony escape under sec. 946.42(3)(a), Stats., and possession of a controlled substance under sec. 161.41(3), Stats. The circuit court dismissed the complaint by concluding that the search and the arrest pursuant thereto were both illegal and, consequently, Swanson was not in "legal custody" at the time of his escape.

The court of appeals affirmed the dismissal order of the circuit court. The court of appeals concluded that, at the time of the search, Swanson had not been placed under arrest and the police officers did not intend to place him under arrest at that time. The court of appeals

[Attorney Bentivegna (Swanson's attorney)]

Q. And while you were questioning Paul the other officer on the scene was standing next to you, Officer Toston.

[Officer Rosenow]

A. Not immediately next to me. He was back towards the squad car and I escorted Paul back to the squad and we kind of met right at the squad.

Q. And was it at that time when there was the call over the radio that there was a domestic dispute at that trailer park?

A. Not immediately. Officer Toston was patting Paul down and found the marijuana, and gave the marijuana to me, and that's when the call for the disturbance came over.

• • • •

Q. At the time that you—I guess the pat down search was conducted before the call came in over the radio as far as the domestic.

A. That's correct.

also stated that the State failed to prove that the sequence of events in the case caused Swanson to believe he was going to be arrested prior to the search.

We agree with the trial and appellate courts, and hold that Swanson was not under arrest for fourth amendment purposes at the time of the search. Viewed objectively, a reasonable person in Swanson's position would not believe that the degree of restraint exercised to perform a field sobriety test during a routine traffic stop was similar to that of formal arrest.

We also hold that the extensive search of Swanson and the seizure of marijuana from him cannot be justified as incident to a formal arrest based on probable cause. A search incident to arrest is justified by the fact of the arrest. Here, Swanson was never arrested for any offense other than those related to the possession of marijuana. Furthermore, we refuse to adopt an exception to warrantless searches based solely on the existence of probable cause. Such an exception could lead to abuses of those rights guaranteed by the fourth amendment.

The critical determination in this case is whether the search of Swanson by Officer Toston was a search incident to formal arrest or merely a pat down frisk for weapons. In the well known case of *Terry v. Ohio,* 392 U.S. 1 (1968), the United States Supreme Court distinguished a search incident to arrest from a pat down frisk for weapons. The *Terry* Court explained that a search incident to arrest is not only necessary to protect the arresting officer but also to discover evidence of a crime and involves a relatively extensive exploration of the subject. *Terry,* 392 U.S. at 25. A pat down frisk for weapons, on the other hand, is only necessary for the discovery of weapons which might be used to harm the police officer or others nearby. Thus, it must be confined in scope such that the police officer should pat down the

suspect in a manner which is minimally necessary for the discovery of weapons. *Id.* at 30.

It follows then, under *Terry* and its progeny, that if the search and discovery of marijuana occurred upon a mere pat down frisk for weapons during an investigatory stop, then the seizure of marijuana here was unlawful under the fourth amendment, the arrest of Swanson for the possession of a controlled substance was invalid, and the subsequent departure of Swanson from police custody cannot be characterized as a felony escape under sec. 946.42(3)(a), Stats. However, if the search and discovery of marijuana occurred incident to a valid arrest, then the search was legal under the fourth amendment as incident to a valid arrest and Swanson may be tried for felony escape.

## I.

The State first argues that the search of Swanson was reasonable under the fourth amendment because he was in fact "under arrest" in a constitutional sense at the time of the search. Both the trial court and court of appeals concluded Swanson was not "under arrest" at the time of the search. However, where the facts are undisputed, "custody" is a question of law and this court shall review the issue **ab initio,** owing no deference to decisions of the lower courts on the subject. *State v. Clappes,* 117 Wis. 2d 277, 280–81, 344 N.W.2d 141 (1984).

Under existing Wisconsin law, three elements are necessary to determine that a person is under arrest. First, his or her ability or freedom of movement is restricted. Second, the arresting officer intends, at that time, to restrain the person. Third, the person under

445

arrest believes or understands that he or she is in custody. *State v. Washington,* 134 Wis. 2d 108, 124–25, 396 N.W.2d 156 (1986). *See also State v. Doyle,* 96 Wis. 2d 272, 283, 291 N.W.2d 545 (1980), and *Huebner v. State,* 33 Wis. 2d 505, 516, 147 N.W.2d 646 (1967). These three elements comprise what is known as a subjective test because they assess the intent and understanding of the parties involved. For consistency and practical reasons, we now abrogate this subjective test and adopt an objective test which assesses the totality of the circumstances to determine the moment of arrest for fourth amendment purposes. An objective test will provide uniformity and consistency with cases decided by the United States Supreme Court, this court and other federal and state courts.[5] Furthermore, an objective test will alleviate the need to assess the subjective understandings of the parties and is not wholly dependent on the self-serving declarations of the police officers or suspects. *Berkemer v. McCarty,* 468 U.S. 420, 442 n.35 (1984).

■

The standard generally used to determine the moment of arrest in a constitutional sense is whether a

---

[5]For example, the United States Supreme Court and this court have adopted an objective test to determine the moment of arrest for *Miranda* purposes. *Miranda v. Arizona,* 384 U.S. 436 (1966). *See Berkemer v. McCarty,* 468 U.S. 420 (1984), and *State v. Koput,* 142 Wis. 2d 370, 418 N.W.2d 804 (1988). Furthermore, this court, among others, used an objective test to determine whether a "seizure" had taken place under the fourth amendment. *State v. Kramar,* 149 Wis. 2d 767, 781, 440 N.W.2d 317 (1989); *United States v. Mendenhall,* 446 U.S. 544, 554 (1980). The next logical step is to adopt an objective test to determine if an arrest has taken place under the fourth amendment. In fact, the Fifth Circuit Court of Appeals has done so in *United States v. Corral-Franco,* 848 F.2d 536, 541 (5th Cir. 1988).

reasonable person in the defendant's position would have considered himself or herself to be "in custody," given the degree of restraint under the circumstances. *See Berkemer,* 468 U.S. at 441–42, and *State v. Koput,* 142 Wis. 2d 370, 380, 418 N.W.2d 804 (1988). The circumstances of the situation including what has been communicated by the police officers, either by their words or actions, shall be controlling under the objective test. The officers' unarticulated plan is irrelevant in determining the question of custody. *Berkemer,* 468 U.S. at 442.

The United States Supreme Court in *Berkemer* faced a situation similar to that faced here by this court. In that case, the Court held that persons temporarily detained pursuant to a routine traffic stop are not "in custody" for purposes of *Miranda. Id.* at 440. It explained that a usual traffic stop is more analogous to a *Terry* stop than to a formal arrest. It is typically brief in duration and public in nature. *Id.* at 439.

■
Like the routine traffic stop in *Berkemer,* here Swanson's erratic driving raised suspicions that he may be involved in criminal conduct. The State, however, argues that the severity of the erratic driving and the fact that Swanson nearly hit at least one pedestrian precluded the situation from being characterized as a routine traffic stop. However, there appears to be no significant distinction between a situation such as in *Berkemer* where the police forced a vehicle to stop after it had been weaving in and out of highway lanes and a situation such as here where the vehicle just happens to stop at the location of the police after having been driven onto the sidewalk. In each situation, the erratic and dangerous driving of the vehicle raised suspicions in the minds of the police officers, and the officers detained the drivers

447

for investigatory purposes. Therefore, the present situation is characterized as a routine traffic stop and detention.

Turning to the case before us, a reasonable person in Swanson's position would not have believed that he was under arrest or in legal custody prior to the search during the course of a routine traffic stop. Swanson was merely asked to perform some field sobriety tests, was never told that he was under arrest nor given any *Miranda* warnings, and not handcuffed. He had no difficulty standing and his speech was not slurred or impaired.

The State, though, argues that a reasonable person would not believe that he or she would be free to leave even if he or she passed the field sobriety test. However, this is not what was communicated by the words and actions of Officers Rosenow and Toston. Swanson was merely asked to perform a field sobriety test. No force, threats, or weapons were used by the officers prior to the search. In the absence of anything to the contrary, the clear implication of such a request is that if one passes the field sobriety test, he or she will be free to leave.

In far more intrusive circumstances than this, courts in a number of jurisdictions have found certain police action to be consistent with a *Terry* investigative detention. For example, this court found that an investigative stop does not become an arrest merely because the police draw their weapons. *Jones v. State,* 70 Wis. 2d 62, 70, 233 N.W.2d 441 (1975). Furthermore, many jurisdictions have recognized that the use of handcuffs does not necessarily transform an investigative stop into an arrest. *See United States v. Glenna,* 878 F.2d 967, 972 (7th Cir. 1989), and *United States v. Taylor,* 716 F.2d 701, 709 (9th Cir. 1983). Additionally, the use of force does not necessarily transform an investigative stop into

448

an arrest. *Martin v. United States,* 889 F.2d 281, 285 (D.C. Cir. 1989), *cert. denied,* 110 S. Ct. 1306 (1990). With these cases in mind, we find it unreasonable to conclude that the request for a field sobriety test under these circumstances should necessarily transform the routine traffic stop into a formal arrest.

If we were to hold otherwise, then the motorist that has been detained pursuant to a traffic stop and suspected of drunk driving would be considered "in custody" and entitled to all of the protections provided by *Miranda.* The *Berkemer* Court explained that, "the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.' " *Berkemer,* 468 U.S. at 440 (quoting *California v. Beheler,* 463 U.S. 1121, 1125 (1983)). Adopting the scenario posited by the State, police would then be forced to warn all detained motorists of their constitutional *Miranda* rights as they would be considered "in custody." This would produce the absurd result that motorists, such as Swanson, could refuse to perform a field sobriety test consistent with their rights against self-incrimination under the fifth amendment. Therefore, in line with the Supreme Court decision in *Berkemer,* we hold that Swanson was not under arrest at the time of search because a reasonable person in Swanson's position would not believe that he was under arrest after merely being requested to perform a field sobriety test during a routine traffic stop.

## II.

The constitutional reasonableness of a search presents a question of law, where the material facts regarding the search are undisputed. *State v. Jackson,* 147 Wis. 2d 824, 829, 434 N.W.2d 386 (1989). Accord-

ingly, we shall review this issue independently and without deference to the circuit court or the court of appeals. *Id.*

In this case, the State also argues that the search of Swanson was supported by probable cause which made it legal under the fourth amendment as incident to a formal arrest.

Numerous cases establish the rule that a custodial arrest of a suspect based on probable cause is a reasonable intrusion under the fourth amendment and an extensive search incident to the valid arrest requires no additional justification. *See Chimel v. California,* 395 U.S. 752, 762 (1969); *United States v. Robinson,* 414 U.S. 218, 235 (1973); and *Rawlings v. Kentucky,* 448 U.S. 98, 111 (1980). Unlike a pat down frisk for weapons, the search incident to a valid arrest is not limited to the stricter *Terry* standards previously discussed. *Robinson,* 414 U.S. at 234. In *Chimel,* the United States Supreme Court explained the justification to search the person of the arrestee:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.

*Chimel,* 395 U.S. at 762-63. Furthermore, where the formal arrest immediately follows the challenged search, it is irrelevant that the search preceded the arrest rather than vice versa, so long as the fruits of the search were

not necessary to support probable cause to arrest. *Rawlings,* 448 U.S. at 111. Following these cases, the State concludes that, "[t]he fact that the search which recovered the marijuana preceded the formal arrest does not matter because there existed probable cause to arrest the defendant before that search."

However, the search-before-arrest cases generally assume that an arrest substantially contemporaneous with the search is essential, and thus they cannot readily be extended to include a situation in which no such arrest occurs. The *Robinson* Court made clear that it is the fact of the lawful arrest which establishes the authority to undertake an extensive search for weapons and evidence of a crime. *Robinson,* 414 U.S. at 235. The actual making of a formal arrest, as opposed to the mere existence of grounds for doing so, is considered to be a significant event. The lawful arrest is not a mere formality, and without an arrest there is no justification for a full search incident to an arrest.

The United States Supreme Court has had but one opportunity to address this area. In *Cupp v. Murphy,* 412 U.S. 291 (1973), it faced a situation where a suspect was not arrested until one month after the police had acquired probable cause to arrest. During the one-month time lag, the police questioned the suspect and took evidence from him. The Supreme Court concluded that:

> *Chimel* stands in a long line of cases recognizing an exception to the warrant requirement when a search is incident to a valid arrest. . . .The basis for this exception is that when an arrest is made, it is reasonable for a police officer to expect the arrestee to use any weapons he may have and to attempt to destroy any incriminating evidence then in his possession. . . .

> Where there is no formal arrest, as in the case before us, a person might well be less hostile to the police and less likely to take conspicuous, immediate steps to destroy incriminating evidence on his person. Since he knows he is going to be released, he might be likely instead to be concerned with diverting attention away from himself. Accordingly, we do not hold that a full *Chimel* search would have been justified in this case without a formal arrest and without a warrant.

*Cupp,* 412 U.S. at 295–96. After stating the standard reiterated above, the *Cupp* Court nevertheless determined that the taking of the evidence was constitutionally permissible under the particular circumstances of that case because the suspect was sufficiently aware that an arrest was imminent.

Here, we conclude that a reasonable person in Swanson's position would not believe that he or she was "in custody" at the time of the search, given the circumstances and the statements made to Swanson by Officers Rosenow and Toston. A reasonable person would understand a request to perform a field sobriety test to mean that if he or she passed the test, he or she would be free to leave. Therefore, no basis existed for a full and extensive *Chimel* search.

■■

We require that the State show that an arrest actually took place for something other than possession of a controlled substance. This requirement will help ensure that the police do not arbitrarily violate an individual's privacy. Formal arrest gives the accused an opportunity to exercise his or her *Miranda* rights and imposes a duty on police officers to apprise the arrestee of those rights and respect the arrestee's use of those rights.

The State contends that Swanson could have been arrested for a number of offenses: operating while intoxicated, sec. 346.63, Stats.; reckless endangering safety, sec. 941.30, Stats.; reckless driving, sec. 346.62(2), Stats.; operating without a valid driver's license, sec. 343.44, Stats.; or obstructing an officer, secs. 946.41(1) and (2), Stats. However, he was never arrested nor was an investigation undertaken for any of these offenses either at the time of the search or anytime thereafter.

In effect, the State requests this court to carve out an exception to warrantless searches based solely on probable cause with no resulting arrest. Presently, there exists no such exception to warrantless searches, and we decline to fashion one now. Allowing police to justify searches in the hope that the search would uncover something they could pursue would surely destroy the privacy of many individuals. The State has failed to show that an arrest for anything other than possession of a controlled substance was ever implied, attempted or accomplished by the police officers in this case. Therefore, we need not address whether probable cause existed to arrest Swanson for any of the other offenses.[6]

---

[6]Clearly, the officers here did possess a reasonable suspicion that Swanson had committed a criminal act, either operating under the influence or reckless endangerment, but arguably lacked probable cause to arrest Swanson at the time of the search. The first indicia of criminal conduct included Swanson's unexplained erratic driving. The second indicia included the odor of intoxicants emanating from Swanson as he spoke. The third indicia included the approximate time of the incident, which occurred at about the time that bars close in the state of Wisconsin. Taken together, these indicia form a basis for a reasonable suspicion that Swanson was driving while intoxicated. *See State v. Seibel,* 163 Wis. 2d 164, 183, 471 N.W.2d 226 (1991), where we held that similar factors add up to a reasonable suspicion but not probable cause.

■ Clearly, the purpose of the search here was a pat down frisk for weapons before the officers placed Swanson in the squad car to perform a field sobriety test. The nature and scope of the search extended beyond that of self protection. The *Terry* doctrine precludes reaching into a suspect's pockets during a frisk for weapons unless the officer feels an object that could be used as a weapon. Neither the officers nor the State argue in this case that the plastic bag of marijuana felt like a weapon that could have been used as an effective weapon. Therefore, the officer had no reason to reach into Swanson's pocket to obtain the marijuana. The search here exceeded its permissible scope and thus was constitutionally unreasonable under the fourth amendment and the principles of

---

However, for a search incident to an arrest to be lawful, the arrest itself must be lawful, and for the arrest to be lawful, probable cause for arrest must exist. *Molina v. State,* 53 Wis. 2d 662, 670, 193 N.W.2d 874 (1972), *cert. denied,* 407 U.S. 923 (1972). Probable cause requires more than bare suspicion. *Leroux v. State,* 58 Wis. 2d 671, 682–83, 207 N.W.2d 589 (1973). Unexplained erratic driving, the odor of alcohol, and the coincidental time of the incident form the basis for a reasonable suspicion but should not, in the absence of a field sobriety test, constitute probable cause to arrest someone for driving while under the influence of intoxicants. A field sobriety test could be as simple as a finger-to-nose or walk-a-straight-line test. Without such a test, the police officers could not evaluate whether the suspect's physical capacities were sufficiently impaired by the consumption of intoxicants to warrant an arrest.

Furthermore, the trial court record fails to indicate that the police officers investigated further any of the other alleged wrongdoings on the part of Swanson. The unexplained erratic driving could very well have been explained, for example, by a mechanical failure with the automobile. Without an investigation, the officers would be left with only suspicion.

*Chimel* and *Terry*. It follows then, that the subsequent arrest of Swanson for possession of a controlled substance was invalid because the controlled substance was the fruit of an illegal search. As Swanson was not "in custody" at the time he eluded police, he cannot be considered as to have escaped from custody under sec. 946.42(3)(a), Stats. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.