County of Milwaukee, Plaintiff-Appellant,
v.
Jesse B. Eagle, Defendant-Respondent.
No. 04-2400.
Court of Appeals of Wisconsin.
Opinion Filed: February 8, 2005.
¶ 1 CURLEY, J.[1]
Milwaukee County appeals from a trial court order dismissing two charges filed against Jesse B. Eagleoperating a motor vehicle under the influence of an intoxicant to a degree that rendered him incapable of safely driving, and operating a motor vehicle with a prohibited alcohol concentrationon the ground that there was no probable cause for the arrest. The County contends that the trial court erred by "applying the wrong law to the facts leading to the OWI arrest[,]" and asserts that the trial court relied solely on the fact that no field sobriety tests were administered in concluding that probable cause did not exist. Although the administration of field sobriety tests would have been helpful, and indeed preferable in circumstances such as these, because probable cause did exist for the arrest regardless, this court reverses and remands for further proceedings.

I. BACKGROUND.
¶ 2 On April 28, 2004, at around midnight, Deputy Craig Ketola, of the Milwaukee County Sheriff's Department, responded to a call reporting a traffic accident that occurred on an exit ramp of I-94, near the corner of 22nd Street and Clybourn Avenue. Eagle's car had rear-ended another, but there was little, if any, damage, so the other driver left the scene shortly after Deputy Ketola arrived. Soon thereafter, Eagle was placed in the squad car and Deputy Ketola placed him under arrest for operating while intoxicated. Deputy Ketola subsequently transported Eagle to a police substation, where the "IntoxiMeter" test was administered. Eagle was subsequently questioned for an Alcoholic Influence Report, but declined to answer a number of questions after being advised of his Miranda[2] rights.
¶ 3 After an administrative suspension hearing, Eagle filed a motion to dismiss the charges against him, asserting that Deputy Ketola lacked probable cause to arrest him. At the motion hearing, Deputy Ketola testified that when he arrived at the scene, Eagle told him that he had been drinking at the Brewers game. He testified that he smelled alcohol on Eagle's breath, observed that his eyes were red and glassy, and noticed that his speech was slurred. He also said that when Eagle got out of the car, he began to fall over, and Deputy Ketola had to catch him. He explained that he did not conduct any field sobriety tests because there was no safe place in which to do so, and reiterated that Eagle mentioned drinking at the Brewers game twice.
¶ 4 On cross-examination, defense counsel questioned Deputy Ketola, and Ketola clarified that he had determined that he was going to arrest Eagle for operating under the influence, based on his observations alone, before Eagle said anything about drinking at the Brewers game. On redirect, Deputy Ketola said that, prior to handcuffing Eagle and putting him in the squad car, Eagle told him that he had been drinking at the Brewers game. He also testified that Eagle continued to talk after he was arrested, but since he had not been read his Miranda rights, Deputy Ketola did not include what he said in his report.
¶ 5 After hearing argument from both sides, the trial court found, in relevant part, as follows:
The Court will also find that this was a one-lane off ramp, that there were vehicles behind the defendant's vehicle which at this time was blocking the ramp; and subsequent to speaking to the defendant  at the time he spoke to the defendant, he made observations and was advised that  by the defendant that he had been at the Brewer's [sic] game, that he had been drinking. The officer smelled an odor of intoxicants, observed the defendant's eyes as red and glassy, believed the defendant was slurring his speech; that upon asking the defendant to exit his vehicle, the defendant lost his balance, and the deputy indicated that he had to assist the defendant to keep him from falling.
That at the time the defendant was placed in handcuffs and put in the back of the officer's squad car; and subsequent to that, the deputy proceeded to move the defendant's vehicle out of traffic; and at some time between when the defendant was placed in the back of the squad car, and the deputy went back to see him after moving the defendant's vehicle, the deputy made a determination that the defendant would be placed under arrest for operating under the influence of intoxicant.
¶ 6 The trial court went on to note that there was no information available with respect to the nature of Eagle's driving. It noted that because the other vehicle was hit at a slow enough speed that no damage resulted, it does not really indicate anything "other than he was driving poorly." The trial court concluded that the "indicia of intoxication that the deputy used to place the defendant under arrest clearly constituted reasonable suspicion," but it did not appear that anything happened between the time that Eagle was placed in the squad car and the time he was placed under arrest that "would form the basis for either increased reasonable suspicion or probable cause." The trial court went on to explain that it had to review the totality of the circumstances, and that it was clear that Eagle could have been given a simple sobriety test in less than thirty seconds, and that it was unclear whether he slurred his speech once or continued to slur throughout the conversation, and whether there was more than one instance in which he exhibited poor balance. As such, the trial court concluded that there was a lack of probable cause to arrest, and "the probable cause that is before the Court is less than that which was rejected in State v. Swanson[, 164 Wis. 2d 437, 475 N.W.2d 148 (1991)]."

II. ANALYSIS.
¶ 7 The County insists that the trial court employed the wrong legal standard in determining that the deputy lacked probable cause to arrest Eagle. The County seems to argue that the trial court mistakenly relied upon Swanson and determined that since no field sobriety tests were administered, there was no probable cause. It argues that Swanson has been limited to its facts, and that "Wisconsin law does[ not] require [a] field sobriety test for an OWI arrest." While not persuaded that the trial court based its determination solely on the fact that no field sobriety tests were administered, this court does conclude that probable cause did exist for the arrest.
¶ 8 "Whether probable cause to arrest exists based on the facts of a given case is a question of law [that this court] review[s] independently of the trial court." State v. Kasian, 207 Wis. 2d 611, 621, 558 N.W.2d 687 (Ct. App. 1996). "Probable cause exists where the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe ... that the defendant was operating a motor vehicle while under the influence of an intoxicant." State v. Nordness, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986). It is a common sense test, not a technical determination, see County of Dane v. Sharpee, 154 Wis. 2d 515, 518, 453 N.W.2d 508, and does not require "`proof beyond a reasonable doubt or even that guilt is more likely than not[,]'" State v. Babbitt, 188 Wis. 2d 349, 357, 525 N.W.2d 102 (Ct. App. 1994) (citation omitted).
¶ 9 In their briefs, the County and Eagle appear to have different views of what "the facts of [the] case" are. The County argues that Wisconsin law does not require field sobriety tests, and lays out a set of facts that it believes is sufficient to support a determination of probable cause. Eagle contends that the trial court considered the totality of the circumstances, and "rejected and/or criticized much of the arresting deputy's direct testimony upon which the County rests its instant argument." However, after reviewing the record, it becomes quite clear that, in rendering its decision, the trial court made several findings of fact. As noted above, and as relevant here, the trial court found the following:
The Court will also find that ... subsequent to speaking to the defendant  at the time he spoke to the defendant, he made observations and was advised that  by the defendant that he had been at the Brewer's [sic] game, that he had been drinking. The officer smelled an odor of intoxicants, observed the defendant's eyes as red and glassy, believed the defendant was slurring his speech; that upon asking the defendant to exit his vehicle, the defendant lost his balance, and the deputy indicated that he had to assist the defendant to keep him from falling.
Exactly which parts of Deputy Ketola's testimony were rejected remains unclear. While the trial court did question how often Eagle slurred, and whether he lost his balance more than once, it did not find that Eagle did not slur or lose his balance. Moreover, based upon these findings, this court cannot agree with the trial court's: (1) conclusion that the evidence presented in support of probable cause was less than that rejected in Swanson, or (2) ultimate determination that probable cause did not exist.
¶ 10 First, Swanson is quite distinguishable from this case. Setting aside the facts that Swanson was arrested for a crime other than operating under the influence, the main issue was the legality of the search that resulted in the discovery of a bag of marijuana, and the supreme court's probable cause "analysis" in regard to a potential arrest for operating under the influence that never actually happened is essentially dicta and largely relegated to a footnote. The relevant facts are also quite different. At around 2:00 a.m., the police observed Swanson's vehicle drive onto the sidewalk and nearly strike a pedestrian. As Swanson exited the car, he was approached by an officer who asked for his driver's license. Swanson told the officer that he did not have his license on him, but offered his Minnesota state identification card instead. The officer smelled intoxicants on his breath, and directed Swanson toward the squad car in order to administer field sobriety tests. "However, [the officer] testified that Swanson had no difficulty standing and did not have slurred or impaired speech." Swanson, 164 Wis. 2d at 442. The officer proceeded to pat down Swanson because he apparently intended to perform the field sobriety tests in the car. During the pat down search, he discovered a bag of marijuana. However, the field sobriety tests were never administered because the officers received a call requesting back up, so they arrested Swanson and placed him in the squad cartaking him along.
¶ 11 After concluding that a reasonable person in Swanson's position would not believe that he or she was "in custody" at the time of the search, id. at 452, requiring the State to show that "an arrest actually took place for something other than possession of a controlled substance[,]" id., and refusing "to carve out an exception to warrantless searches based solely on probable cause with no resulting arrest[,]" id. at 453, the supreme court concluded that "[t]he State has failed to show that an arrest for anything other than possession of a controlled substance was ever implied, attempted or accomplished by the police officers in this case." Id. It went on: "Therefore, we need not address whether probable cause existed to arrest Swanson for any of the other offenses." Id. It was at that point that the supreme court noted, in a footnote:
Unexplained erratic driving, the odor of alcohol, and the coincidental time of the incident form the basis for a reasonable suspicion but should not, in the absence of a field sobriety test, constitute probable cause to arrest someone for driving while under the influence of intoxicants. A field sobriety test could be as simple as a finger-to-nose or walk-a-straight-line test. Without such a test, the police officers could not evaluate whether the suspect's physical capacities were sufficiently impaired by the consumption of intoxicants to warrant an arrest.
Furthermore, the trial court record fails to indicate that the police officers investigated further any of the alleged wrongdoings on the part of Swanson. The unexplained erratic driving could very well have been explained, for example, by a mechanical failure with the automobile. Without an investigation, the officers would be left with only suspicion.
Id. at 453-54 n.6. This "analysis" has subsequently been limited to the facts of that case. For example, in State v. Wille, 185 Wis. 2d 673, 518 N.W.2d 325 (Ct. App. 1994), we concluded that "[t]he Swanson footnote does not mean that under all circumstances the officer must first perform a field sobriety test, before deciding whether to arrest for operating a motor vehicle while under the influence of an intoxicant." Wille, 185 Wis. 2d at 684. In any event, this court is not convinced that the evide nce presented in this case was less than that "rejected" in Swanson.
¶ 12 Here, Deputy Ketola responded to a call reporting an accident on an exit ramp. According to the trial court's findings, after Deputy Ketola arrived at the scene, he smelled intoxicants on Eagle's breath, observed that his eyes were red and glassy, and believed that Eagle was slurring his speech. The trial court also found that after the deputy asked Eagle to exit his car, he lost his balance, and Deputy Ketola had to catch him from falling. As such, unlike Swanson, who had no trouble talking or standing, Eagle slurred his speech, lost his balance when trying to stand up, and had red, glassy eyes. Eagle was also involved in an accident, albeit minor, with another car. Taken together, these facts appear "`sufficient to lead a reasonable officer to believe that guilt is more than a possibility.'" See Sharpee, 154 Wis. 2d at 518 (citation omitted).
¶ 13 Moreover, while the trial court did question how often Eagle slurred and whether he lost his balance more than once, this court is not convinced that those "questions" undermine a finding of probable cause. That is, after Deputy Ketola caught Eagle from falling, he was placed in the squad caran unlikely place for him to display any more problems with balance. Furthermore, the fact that Eagle slurred at all is certainly a fact to be taken into consideration, regardless of whether he slurred every word or every other sentence. Neither of these factors alone would establish probable cause, but taken together, and considered in light of the totality of the circumstances, they support a determination that probable cause existed for the arrest.
¶ 14 While this court certainly does not condone the practice of failing to administer field sobriety tests, these tests are not an absolute prerequisite for a determination of probable cause to arrest for operating a motor vehicle while under the influence of an intoxicant. Employing a common sense test, and considering the relevant evidence, this court concludes that the totality of the circumstances within Deputy Ketola's knowledge at the time of the arrest would lead a reasonable police officer to believe that Eagle was operating a motor vehicle while under the influence of an intoxicant. See Nordness, 128 Wis. 2d at 35. As such, we reverse and remand for further proceedings.
By the Court.  Order reversed and cause remanded.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2003-04).

All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] Miranda v. Arizona, 384 U.S. 436 (1966).