COURT OF APPEALS
DECISION
DATED AND FILED

February 19, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2518-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF1

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TIMOTHY C. MCMAHON,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dodge County: JOSEPH G. SCIASCIA, Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Timothy McMahon appeals a judgment of conviction, following a no contest plea, for operating a motor vehicle with a prohibited alcohol concentration as a fifth offense. On appeal, McMahon argues that he was interrogated in violation of the Wisconsin Constitution when a police officer asked him questions during a preliminary breath test without first giving him *Miranda* warnings,[1] and that the circuit court erred in denying his motion to suppress certain statements and physical evidence. We conclude that McMahon was not subject to an unconstitutional interrogation because he was not in custody during the questioning; therefore, we affirm the judgment.

## BACKGROUND

¶2 One evening in January 2021, a Dodge County sheriff's deputy stopped a vehicle driven by McMahon on suspicion of speeding. After McMahon rolled down his window, the officer observed that he had bloodshot eyes and slow speech and was emitting an odor of intoxicants. The officer also observed empty beer cans in the backseat of the vehicle. The officer informed McMahon of the reason for the stop and asked if he had consumed any alcohol. McMahon responded that he had consumed three or four beers at a bar earlier that day. The officer asked for McMahon's driver's license and returned to his squad car to verify McMahon's information.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

¶3    After running McMahon's driver's license, the officer learned that McMahon had four prior OWI-related convictions.[2]  As a result, McMahon was subject to a prohibited alcohol concentration of .02 grams per 100 milliliters of blood.

¶4    The officer informed McMahon that he would be conducting field sobriety testing to make sure that McMahon was "okay to be driving."  The officer asked whether McMahon would prefer to do the testing at the police department since it was cold outside, and McMahon responded, "That sounds fair to me."  After patting him down, the officer placed McMahon in the back of the squad car to be transported to the department.  McMahon was not handcuffed and the officer told him that he was "not under arrest" and was just "being detained for investigation."

¶5    The drive to the police department took less than two minutes.  After arriving, the officer escorted McMahon into the garage.  A second officer was also present and stood at the threshold of the garage door, which remained open and unobstructed.  McMahon demonstrated some "clues" of impairment during the standard field sobriety testing, but he performed satisfactorily on other portions of the tests.

---

[2] We use the term "OWI-related offense" to refer to a violation of any of the offenses, including WIS. STAT. §§ 346.63(1), (2), (2m), (6), 940.09, and 940.25, that are enumerated in WIS. STAT. § 343.305(3)(a) and (9)(a)5.a.  All references to the Wisconsin Statutes are to the 2023-24 version.

¶6     The officer proceeded to administer a preliminary breath test ("PBT") to McMahon.[3]  While waiting for the results, the officer asked McMahon, "So where do you think you're at blood alcohol level wise?"  McMahon responded that his blood alcohol concentration was "probably .05 or .06."  After learning that the PBT result was .095, the officer asked McMahon whether he knew that he was subject to "a [.02] restriction."  McMahon responded, "Yeah I believe I had that."  The officer did not give McMahon *Miranda* warnings before asking these questions.

¶7     The officer placed McMahon under arrest and read him the "Informing the Accused" form pursuant to Wisconsin's implied consent law.  *See* WIS. STAT. § 343.305(4).  McMahon consented to a chemical test of his blood, which yielded a result above his legal limit.  The State charged McMahon with operating with a prohibited alcohol concentration as a fifth offense contrary to WIS. STAT. § 346.63(1)(b).

¶8     During the circuit court proceedings, McMahon moved to suppress the statements he made to the officer during the PBT testing and the results from the chemical blood test.  McMahon argued that the questioning was an unlawful interrogation that violated Article I, Section 8 of the Wisconsin Constitution, and

---

[3] McMahon does not dispute that there was probable cause to administer a PBT.  *See* WIS. STAT. § 343.303; *County of Jefferson v. Renz*, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999) (providing that police must have probable cause to administer a PBT, but in this context, probable cause "refers to a quantum of proof greater than the reasonable suspicion necessary to justify an investigative stop, … but less than the level of proof required to establish probable cause for arrest").

that any evidence derived from that interrogation must be suppressed as fruit of the poisonous tree.[4]

¶9    More specifically, McMahon argued that the officer was required to give him *Miranda* warnings before asking questions during the course of administering the PBT. Although McMahon appeared to concede that he was not in custody at that time, he argued that "formal custody is *not* always the *sine qua non* of the *Miranda* rule" and that there are circumstances in which *Miranda* warnings must be given "even in the absence of 'formal custody.'" Relying on our supreme court's decision in *State v. Knapp*, 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899, McMahon argued that one of those circumstances is when an officer is subjectively aware that the officer "will ultimately be taking [a suspect] into custody" and delays placing the suspect under arrest in an "effort to garner admissions" and "circumvent *Miranda*." Those circumstances were present here, McMahon argued, because the officer "had already made his decision to arrest" McMahon before administering the PBT. Under the circumstances, McMahon argued, his constitutional right against self-incrimination was violated.

¶10    In its response, the State argued that *Miranda* warnings are not required unless a defendant is subject to a "custodial interrogation." Because McMahon was not in custody when he was questioned, the State argued, his right against self-incrimination was not violated.

---

[4] McMahon also moved to suppress the results of the blood test on due process grounds. Specifically, he argued that the "Informing the Accused" form did not put him on notice that police might request his blood as part of an investigation into whether he was operating a vehicle with a prohibited alcohol concentration. The circuit court rejected this argument and we do not address it further because McMahon has not renewed it on appeal.

5

¶11 Following a hearing at which the officer testified and portions of his body camera footage were played, the circuit court denied McMahon's motion. The court found that the officer "had already made [the] decision" to arrest McMahon before administering the PBT, but it explained that an officer's "subjective intent is not relevant" in determining whether *Miranda* warnings were required. Here, the court explained, the dispositive issue is whether McMahon was in custody when the officer questioned him. Because McMahon was not in custody, *Miranda* warnings were not required.

¶12 McMahon ultimately pled no contest to operating a motor vehicle with a prohibited alcohol concentration as a fifth offense, and the circuit court adjudicated him guilty and entered a judgment of conviction. McMahon appeals.

## DISCUSSION

¶13 The Fifth Amendment to the United States Constitution and Article I, Section 8 of the Wisconsin Constitution both protect against compulsory self-incrimination. *State v. Bartelt*, 2018 WI 16, ¶26, 379 Wis. 2d 588, 906 N.W.2d 684. To that end, law enforcement must give certain warnings prior to a custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436 (1966). These now-familiar *Miranda* warnings inform suspects that they have the right to remain silent; that anything they say can be used against them in a court of law; that they have the right to have an attorney present; and that an attorney will be appointed prior to questioning if the suspects so desire and cannot afford an attorney. *Id.* at 444-45.

¶14 The reason that the *Miranda* warnings must be given when a suspect is in custody and subject to interrogation is because the warnings are "aimed at dispelling the compulsion inherent in custodial surroundings." *State v. Pheil*, 152

Wis. 2d 523, 530-31, 449 N.W.2d 858 (1989). This is the rule under the United States Constitution and the Wisconsin Constitution alike. *See id.*; ***Bartelt***, 379 Wis. 2d 588, ¶30 ("under both constitutions," the ***Miranda*** rule applies "only to custodial interrogations").

¶15 Statements obtained in violation of ***Miranda*** are "inadmissible in the prosecution's case-in-chief." *See **State v. Mendoza***, 96 Wis. 2d 106, 118-19, 291 N.W.2d 478 (1980). Additionally, under the Wisconsin Constitution, any physical evidence obtained "as a direct result" of an "intentional" ***Miranda*** violation is also inadmissible. ***Knapp***, 285 Wis. 2d 86, ¶1. In this regard, the Wisconsin Constitution provides defendants with protections above and beyond the protections provided by the United States Constitution. *See **United States v. Patane***, 542 U.S. 630, 634 (2004) (under the United States Constitution, "suppression of the physical fruits of the suspect's unwarned but voluntary statements" is not required).

¶16 In this appeal, McMahon renews the argument that he made in the circuit court. That is, he again appears to concede that he was not in custody for purposes of ***Miranda*** at the time of the purported interrogation, but he argues that ***Miranda*** warnings were required—even in the absence of custody—as a result of the officer's subjective intent to arrest him. According to McMahon, our supreme court established this rule when it interpreted Article I, Section 8 of the Wisconsin Constitution in ***Knapp***.

¶17 In that case, there was an outstanding warrant for Knapp's arrest, and the arresting officer, who suspected Knapp of having committed a homicide the night before, went to his apartment with the intention of taking him into custody pursuant to the warrant. ***Knapp***, 285 Wis. 2d 86, ¶¶1, 7-8. Knapp let the

7

officer in, and the officer told Knapp that he was needed at the police station. *Id.*, ¶7. The officer then accompanied Knapp to his bedroom and asked Knapp about the clothes he had been wearing the night before. *Id.*, ¶8. Knapp pointed to a pile of clothing, which the officer seized. *Id.* The homicide victim's blood was later found on a sweatshirt that was among the items that were seized. *Id.*, ¶9. Knapp was charged with the homicide, and he moved to suppress evidence including the bloodstained sweatshirt. *Id.* ¶13.

¶18 During an evidentiary hearing on Knapp's motion, the officer testified that Knapp was in custody during the interaction at the apartment. *Id.* The officer further testified that he intentionally refrained from reading the *Miranda* rights to Knapp in order to "keep the lines of communication open" and because the officer knew that Knapp might not respond to questioning if the officer read him his rights. *Id.*, ¶¶13-14.

¶19 By the time the case reached our supreme court, the parties agreed that the State possessed the sweatshirt as a direct consequence of an intentional *Miranda* violation, and that the sole remaining legal issue was whether the physical evidence should be suppressed as a result of the violation. *Id.*, ¶20. Our supreme court determined that the evidence must be suppressed to remedy the violation of Article I, Section 8 of the Wisconsin Constitution. *Id.*, ¶83. The court explained that suppression was required due to the intentional nature of the *Miranda* violation and the need to deter such conduct in the future. *Id.*, ¶¶74-75.

¶20 McMahon argues that the same result follows here. We disagree. The factual and legal issues in *Knapp* were entirely different than the disputed issues in this case—as discussed, it was undisputed that Knapp was in custody at the time the officer interrogated him and that the custodial interrogation violated

*Miranda*, and the sole issue was the appropriate remedy. Under the circumstances, the court had no reason to address the threshold question of when *Miranda* warnings are required.

¶21 McMahon nevertheless places great emphasis on the ***Knapp*** court's discussion of the officer's subjective intent—he argues that subjective intent may also be relevant in determining whether *Miranda* warnings are required. But again, the problem with this argument is that the ***Knapp*** court's discussion of subjective intent was focused on how an officer's intentional conduct in attempting to circumvent *Miranda* might factor into the remedy for an established *Miranda* violation.

¶22 To the extent that McMahon asks us to extend ***Knapp*** based on its spirit if not its letter, there are at least two problems. First, the ***Knapp*** court explicitly recognized that the *Miranda* rule is fashioned to address "the inherently coercive character of custodial interrogation[s]," *see **id.***, ¶78 (citation omitted), and, as we have explained, "[i]nformation, plans and opinions of which a suspect is unaware cannot, by definition, exert pressure" or create a coercive environment, *see **State v. Mosher***, 221 Wis. 2d 203, 218, 584 N.W.2d 553 (Ct. App. 1998). Second, tying *Miranda* obligations to an officer's subjective intentions might lead to the very circumvention of the law that ***Knapp*** forcefully condemns. That is, McMahon's suggested rule could create an incentive for an officer to disclaim that the officer had the intent to arrest a suspect after the fact in order to avoid the consequences that result from a *Miranda* violation. An objective analysis— untethered from factors that are readily susceptible to manipulation such as an

9

officer's alleged subjective intent—more effectively addresses McMahon's concerns about attempts to circumvent *Miranda*.[5]

¶23 Accordingly, for all these reasons, ***Knapp*** does not support McMahon's argument that the officer was required to give him ***Miranda*** warnings based on the officer's subjective intent to arrest him. The officer was not required to give McMahon warnings unless he was subject to custodial interrogation.

¶24 Having addressed McMahon's reliance on ***Knapp***, we now turn to the subject of custodial interrogation. Here, the circuit court determined that the officer interrogated McMahon when he asked McMahon questions during the administration of the PBT, but the court determined that ***Miranda*** warnings were not required because McMahon was not in custody.

---

[5] McMahon makes an additional argument regarding ***Knapp***, which we now briefly address. This argument is based on the fact that our supreme court considered Knapp's appeal on two occasions: first in its original decision addressing the denial of his motion to suppress, *see State v. Knapp*, 2003 WI 121, 265 Wis. 2d 278, 666 N.W.2d 881, *vacated by Wisconsin v. Knapp*, 542 U.S. 952 (2004), and then on a second occasion after the United States Supreme Court vacated that decision and remanded the case, which resulted in *State v. Knapp*, 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899, the decision that we discuss above. For purposes of this footnote, we refer to these two decisions as ***Knapp I*** and ***Knapp II***.

McMahon points out that the court's only discussion of Knapp being in custody at the time of his interrogation occurred in ***Knapp I***. Specifically, with respect to custody, the ***Knapp I*** decision stated: "The State concedes that at the time Knapp identified the physical evidence, *i.e.*, his sweatshirt, he was in custody and being interrogated by police." ***Knapp I***, 265 Wis. 2d 278, ¶31. Then, after the case returned to our supreme court on remand in ***Knapp II***, the court did not repeat the State's concession about custody from ***Knapp I*** or analyze whether Knapp was in custody. McMahon argues that by not specifically including any analysis of custody in ***Knapp II***, the court "canceled" the threshold custody requirement as a "basis of [its] … decision."

We disagree. Contrary to McMahon's argument, ***Knapp II*** explicitly provides the following: "[W]e reinstate all portions of our decision in [***Knapp I*** that were] not implicated by the Supreme Court's order vacating our decision in light of ***United States v. Patane***, 542 U.S. 630 (2004)." ***Knapp II***, 285 Wis. 2d 86, ¶2 n.3. The State's concession that Knapp was in custody was not implicated by the United States Supreme Court's analysis in ***Patane***.

10

¶25 McMahon does not develop an argument challenging the circuit court's determination about custody.[6] Under the circumstances, we could take McMahon's silence on this topic as a concession. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (it is a tacit concession when an appellant ignores a ground on which the circuit court ruled); *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider arguments that are unsupported by adequate factual and legal citations or are otherwise undeveloped).

¶26 Indeed, McMahon's failure to develop an argument is unsurprising, given that many cases have determined that individuals under similar circumstances were not in custody. *See, e.g.*, *Berkemer v. McCarty*, 468 U.S. 420, 435-42 (1984) (a motorist subject to a roadside traffic stop and field sobriety testing was not in custody); *State v. Lonkoski*, 2013 WI 30, ¶¶42-44, 346 Wis. 2d 523, 828 N.W.2d 552 (an individual who was questioned at the police department was not in custody when he came on his own volition, was told he was "not under arrest," and was "never restrained in any way"); *State v. Swanson*, 164 Wis. 2d

---

[6] Whether a person is in custody for purposes of *Miranda* is an objective determination that ultimately turns on whether "there was a formal restraint on freedom of movement of the degree associated with a formal arrest." *See State v. Lonkoski*, 2013 WI 30, ¶6, 346 Wis. 2d 523, 828 N.W.2d 552 (citation omitted). In making this determination, we consider among other things, "the degree of restraint" employed by police officers; "the purpose, place, and length of the interrogation"; and "what has been communicated [to the suspect] by the police officers." *State v. Bartelt*, 2018 WI 16, ¶32, 379 Wis. 2d 588, 906 N.W.2d 684.

Wisconsin courts also analyze whether a suspect is in custody for Fourth Amendment purposes. *See, e.g.*, *State v. Quartana*, 213 Wis. 2d 440, 448-50, 570 N.W. 2d 618 (Ct. App. 1997) (considering whether a seizure was reasonable under the Fourth Amendment and analyzing "whether a reasonable person in the suspect's position would not have considered himself or herself to be in custody given the degree of restraint under the circumstances"); *State v. Swanson*, 164 Wis. 2d 437, 445-47, 475 N.W.2d 148 (1991) (same), *abrogated on other grounds by State v. Sykes*, 2005 WI 48, ¶27, 279 Wis. 2d 742, 695 N.W.2d 277.

437, 447-49, 475 N.W.2d 148 (1991), *abrogated on other grounds by* **State v. Sykes**, 2005 WI 48, ¶27, 279 Wis. 2d 742, 695 N.W.2d 277 (concluding that a motorist who was detained and subject to field sobriety testing was not effectively "under arrest," and that if detained motorists under these circumstances were "in custody" for purposes of **Miranda**, it would produce "the absurd result that motorists … could refuse to perform a field sobriety test").

¶27     Here, McMahon was told that he was "not under arrest" and that he was just "being detained for investigation."  Although the field sobriety tests and the PBT occurred in the garage at the police station, it was only several minutes from the site of the stop and McMahon went to the station voluntarily, largely offsetting the pressure that questioning at a police station might otherwise impose. The entire duration of the encounter was relatively brief, approximately twenty-six minutes; McMahon was at no point in handcuffs or otherwise restrained; and throughout the encounter, the garage door was left open and unobstructed. Therefore, even beyond McMahon's concession on the point, our independent review of the record supports a conclusion that McMahon was not in custody when he was questioned.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

12