COURT OF APPEALS
DECISION
DATED AND FILED

March 31, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1112-CR**

Cir. Ct. No. **2020CT166**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

CHRISTOPHER ANTONJE TEK,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Rock County: KARL HANSON, Judge. *Affirmed*.

¶1   KLOPPENBURG, J.[1]  Christopher Tek appeals his conviction of second-offense operating with a prohibited alcohol concentration arising from a

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

traffic stop, challenging only the circuit court's denial of his motion to suppress evidence. Tek argues that, when he was handcuffed within approximately 45 seconds of initiation of the stop, he was placed under arrest and the warrantless arrest was not supported by probable cause. Therefore, his argument continues, all evidence obtained thereafter must be suppressed because it was obtained in violation of his Fourth Amendment rights. Following our supreme court's analysis in *State v. Blatterman*, 2015 WI 46, 362 Wis. 2d 138, 864 N.W.2d 26, I conclude that Tek was not arrested when he was placed in handcuffs. Accordingly, I affirm.

## BACKGROUND

¶2 The State filed a criminal complaint charging Tek with second-offense operating with a prohibited alcohol concentration and second-offense operating a motor vehicle while intoxicated, based on evidence obtained during and following a traffic stop. Tek filed a motion to suppress all evidence obtained after he was handcuffed, because, according to Tek, at that point he was arrested without probable cause in violation of his Fourth Amendment rights.

¶3 The circuit court held an evidentiary hearing at which the officer who conducted the stop, Benito Rocha, testified and the police report and Rocha's body camera footage were entered into evidence. The following facts, taken from Rocha's testimony, Rocha's police report, and the body camera footage, are not disputed on appeal.

¶4 At the time of the stop, Rocha had eleven and one-half years of experience as an officer with the Janesville Police Department and had received training in conducting traffic stops and investigating suspected operating while intoxicated offenses.

2

¶5      At approximately 4:30 a.m. on June 10, 2018, a Sunday, Rocha received a call from dispatch that a car that was possibly involved in an accident was driving on flat tires around Richardson Street and Benton Avenue, a residential area in the City of Janesville. Rocha drove northbound on Richardson Street and observed a car with its headlights on, stopped on the same side of the road that Rocha was driving on, but facing south towards the oncoming traffic. As Rocha drove closer to the car, its headlights turned off. Rocha turned the search light of his squad car on the stopped car and saw one person, later identified as Tek, sitting in the driver's seat.

¶6      Rocha approached the car, saw Tek sitting in the driver's seat "with keys in hand," and asked Tek, "[H]i, how are you today?" Tek did not respond. Rocha asked Tek what was going on and whether Tek could hear him. Tek then, unprompted, began getting out of the car while stating, "Put me in [hand]cuffs or I'll leave."[2] As Rocha again asked Tek what was going on and twice asked whether Tek had been drinking, Tek was restlessly shifting around, turning to face the car and putting his hands behind his back, turning to face Rocha, turning back to face the car when Rocha ordered him to do so, and throughout repeatedly saying variations of, "put me in cuffs or I'll leave," and that he had a ride coming and was "about to get picked up right now." Tek did not answer Rocha's questions regarding whether he was drinking, but did respond to Rocha's questions about whether Tek was the only person in the vehicle. During this

---

[2] The circuit court found that Tek made this statement after watching the video footage from Officer Rocha's body camera, and Tek does not argue on appeal that the court's findings as to this point in the video are erroneous. On this court's equipment, the audio of the body camera footage at this point in the video is unclear, and we defer to the circuit court's undisputed factual finding as to Tek's statement at this point on the body camera video.

interaction, Tek appeared agitated, restless, and slightly incoherent in his repetition of his claim that someone was coming to pick him up while ignoring Rocha's questions.

¶7    Approximately 45 to 60 seconds after Rocha first approached Tek, as Tek was pulling away from Rocha, Rocha told Tek to drop the keys into his hands and began to place Tek in handcuffs, as a "control maneuver[]" while he was investigating what was "going on here." Tek responded, "just please let me go. I'm about to get picked up right now." Rocha told Tek to "relax" and completed placing him in handcuffs. As Rocha placed Tek in handcuffs, Rocha detected an odor of alcohol and an odor of marijuana coming from Tek. Rocha continued to ask Tek what he had done that night, and Tek did not respond.

¶8    After placing Tek in handcuffs, and approximately 95 seconds after first approaching Tek, Rocha led Tek away from the stopped car and moved Tek toward the squad car. Tek became more agitated and repeatedly tried to pull away from Rocha while yelling and swearing, and Rocha placed Tek in the squad car, telling him to "have a seat." Once Tek was in the squad car, Rocha closed the door.

¶9    While Tek was in the squad car, Rocha investigated the stopped car and the surrounding area, looking for damage to trees and parked cars that Tek may have collided with. Rocha saw that the car's two front tires were missing and down to the rim, the back tires were flat, and there was damage and paint-transfer on the front bumper.

¶10    Rocha returned to his squad car and asked Tek multiple times to identify himself. Tek refused and began to yell obscenities and to bang his head on the interior of the squad car.

4

¶11 Approximately seven and one-half minutes after Rocha had placed Tek in the squad car (and eight and one-half minutes after Rocha had placed Tek in handcuffs), Rocha stopped his body camera and drove Tek to the Rock County jail, where Tek was arrested.

¶12 At the jail, Tek's blood was drawn pursuant to a search warrant and the analysis of his blood sample showed a blood alcohol content of .162.

¶13 At the conclusion of the hearing on Tek's motion to suppress, the circuit court denied the motion in an oral ruling. One week later, the circuit court, "[u]pon further consideration of the evidence and arguments presented at the … hearing," superseded its oral ruling with a written decision that also denied the motion but for different reasoning.

¶14 In its written order, the circuit court determined that Tek was not under arrest until Rocha transported him away from the scene to the jail, and that until that point Tek was in investigative detention. The court found credible Rocha's testimony, confirmed by the body camera footage, that before Rocha placed Tek in handcuffs, Tek was confrontational and uncooperative, and Tek's statements in response to Rocha's questions demonstrated a consciousness of guilt and that he would leave if Rocha did not place him in handcuffs. The court determined that "[a] reasonable person under this situation would … recognize that Rocha intended to detain Tek so that he could start his investigation." The court also determined that, once Rocha transported Tek to the jail, "it would be plain to any reasonable person" that Tek was in custody and "not free to go about [his] business after a brief investigative detention."

¶15 The circuit court concluded that, under the totality of circumstances, Rocha had probable cause to arrest Tek for operating while intoxicated when Rocha transported Tek away from the scene because at that point,

> Rocha knew the following: (1) it was 4:30 a.m.; (2) Rocha was dispatched to investigate an accident reported near Richardson Street and Benton Avenue; (3) when Rocha arrived on Richardson Street, Tek was in a vehicle parked on the wrong side of the street, facing the wrong direction; (4) when Rocha approached Tek, Tek got out of that car with keys; (5) Tek would not answer Roach's basic questions; (6) in the first moments of their interaction, when Rocha asked Tek if he had been drinking, Tek responded confrontationally by saying, "Put me in cuffs or I am leaving;" (7) Tek indicated a ride was approaching to take him away; (8) Rocha detected the odor of alcohol and marijuana on Tek while handcuffing him; and (9) Rocha observed damage to the front of the car Tek exited, which included paint transfer and flat front tires.

¶16 Pursuant to a plea agreement, Tek pled no contest to second-offense operating while intoxicated, and the charge of second-offense operating with a prohibited alcohol concentration was dismissed and read in at the plea and sentencing hearing.[3]

¶17 Tek appeals his conviction, challenging the circuit court's denial of his motion to suppress evidence.[4]

---

[3] A no contest plea is one in which "the defendant either maintains innocence or does not admit to the commission of the crime." *State v. Multaler*, 2002 WI 35, ¶4 n.4, 252 Wis. 2d 54, 643 N.W.2d 437; *see also North Carolina v. Alford*, 400 U.S. 25 (1970).

[4] WISCONSIN STAT. §808.03(3)(b) allows an order denying a motion to suppress evidence to be reviewed upon appeal of a conviction "notwithstanding the fact that the judgment or order was entered upon a plea of guilty or no contest to the information or criminal complaint."

**DISCUSSION**

¶18    Tek argues that Rocha arrested him when Rocha placed him in handcuffs and that the warrantless arrest was unlawful because it was not supported by probable cause.  I first summarize the applicable standard of review and legal principles.  I next apply that law to the undisputed facts and conclude that, as the circuit court ruled, Tek was not arrested when Rocha placed him in handcuffs.  Finally, I address and reject Tek's arguments to the contrary.

**I.  Applicable Standard of Review and Legal Principles**

¶19    This court analyzes the grant or denial of a motion to suppress under a two-part standard of review:  we uphold the circuit court's findings of historical fact unless they are clearly erroneous, and we review the application of constitutional principles to those facts independently, as questions of law. ***Blatterman***, 362 Wis. 2d 138, ¶16.  Pertinent here, when Tek was arrested and whether his arrest was supported by probable cause are questions of law that this court reviews de novo.  *See **State v. Mosher***, 221 Wis. 2d 203, 211, 584 N.W.2d 553 (Ct. App. 1998); ***State v. Kutz***, 2003 WI App 205, ¶13, 267 Wis. 2d 531, 671 N.W.2d 660.

¶20    The Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect individuals against unreasonable searches and seizures.[5]  "To determine whether a search or seizure is

---

[5] The Fourth Amendment of the United States Constitution states, "The right of the people to be secure in their persons … against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause …."  Article I, Section 11 of the Wisconsin Constitution provides, "The right of the people to be secure in their persons ... against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause …."

'unreasonable,' the court first determines whether the initial interference with an individual's liberty was justified, and then considers whether subsequent police conduct was reasonably related in scope to the circumstances that justified the initial interference." **State v. Griffith**, 2000 WI 72, ¶26, 236 Wis. 2d 48, 613 N.W.2d 72 (citing **Terry v. Ohio**, 392 U.S. 1, 19-20). Consistent with the Fourth Amendment's prohibition of unreasonable seizures,

> "[p]ursuant to **Terry v. Ohio**, 392 U.S. 1 … a police officer may, under certain circumstances, temporarily detain a person for purposes of investigating possible criminal behavior even though there is not probable cause to make an arrest." [**Blatterman**, 362 Wis. 2d 138], ¶18 (citing **Terry**, 392 U.S. at 22 …); **State v. Chambers**, 55 Wis. 2d 289, 294, 198 N.W.2d 377 (1972). "The Wisconsin Legislature codified the **Terry** constitutional standard in WIS. STAT. § 968.24." **Id.**… "[A]n officer may conduct a temporary investigatory detention when 'the officer reasonably suspects that [a] person is committing ... a crime.' § 968.24." **Id., ¶**19.

**State v. Dobbs**, 2020 WI 64, ¶95, 392 Wis. 2d 505, 945 N.W.2d 609 (Ziegler, J., concurring).

¶21    "An officer has reasonable suspicion 'when, at the time of the stop, he or she possesses specific and articulable facts which would warrant a reasonable belief that criminal activity [is or] was afoot.'" **State v. VanBeek**, 2021 WI 51, ¶28, 397 Wis. 2d 311, 960 N.W.2d 32 (quoting **State v. Waldner**, 206 Wis. 2d 51, 55, 556 N.W.2d 681 (1996)).

> Reasonable suspicion, as with other Fourth Amendment inquiries, is an objective test that examines the totality of circumstances. **State v. Guzy**, 139 Wis. 2d 663, 675, 407 N.W.2d 548 (1987). An officer has reasonable suspicion if he or she has "a suspicion grounded in specific, articulable facts and reasonable inferences from those facts, that the individual has committed a crime." **Id.** "An inchoate and unparticularized suspicion or 'hunch' will not suffice." **Id.** (citing **Terry**, 392 U.S. at 27 …).

*VanBeek*, 397 Wis. 2d 311, ¶52.

¶22     If reasonable suspicion exists that a crime has been committed, an officer "may conduct a traffic stop in order to investigate the circumstances that provoke suspicion" or, in other words, to "try to obtain information confirming or dispelling the officer's suspicions." *State v. Houghton*, 2015 WI 79, ¶22, 364 Wis. 2d 234, 868 N.W.2d 143 (citing *Berkemer v. McCarty*, 468 U.S. 420 (1984)) (internal quotation marks omitted). Accordingly, "an officer may conduct an investigatory detention so long as [the officer] has reasonable suspicion to do so and the detention is reasonable in duration." *Dobbs*, 392 Wis. 2d 505, ¶95 (Ziegler, J., concurring) (citing *Blatterman*, 362 Wis. 2d 138, ¶¶19-20).

> When a temporary detention is justified, we still examine the circumstances of the detention to determine whether the investigative means used in the continued seizure are the least intrusive means reasonably available to verify or dispel the officer's suspicion and whether it lasted no longer than is necessary to effectuate the purpose of the stop.

*State v. Pickens*, 2010 WI App 5, ¶27, 323 Wis. 2d 226, 779 N.W.2d 1 (internal quotation marks and quoted sources omitted).

¶23     An investigatory stop "usually involves only temporary questioning and thus constitutes only a minor infringement on personal liberty." *State v. Young*, 2006 WI 98, ¶20, 294 Wis. 2d 1, 717 N.W.2d 729. In some circumstances:

> What starts as an investigatory detention can turn into an arrest. If and when it does, the Fourth Amendment requires that the arrest be supported by probable cause. *See Blatterman*, 362 Wis. 2d 138, ¶29, 864 N.W.2d 26. The test [for] whether a suspect is arrested is "whether a 'reasonable person in the defendant's position would have considered himself or herself to be "in custody," given the degree of restraint under the circumstances.'" *Id.*, ¶30

(quoting *State v. Swanson*, 164 Wis. 2d 437, 447, 475 N.W.2d 148 (1991), abrogated on other grounds by *State v. Sykes*, 2005 WI 48, 279 Wis. 2d 742, 695 N.W.2d 277).

*Dobbs*, 392 Wis. 2d 505, ¶96 (Ziegler, J., concurring).

¶24    An arrest is "inevitably accompanied by future interference with the individual's freedom of movement ….  A reasonable person under the circumstances would not believe his or her detention was only temporary." *State v. Anker*, 2014 WI App 107, ¶17, 357 Wis. 2d 565, 855 N.W.2d 483 (internal quotation marks and quoted sources omitted).

¶25    In determining whether a reasonable person would consider himself or herself to be in custody, a court considers the totality of the circumstances such as the person's freedom to leave; the purpose, place, and length of the interrogation; and the degree of restraint. *State v. Morgan*, 2002 WI App 124, ¶12, 254 Wis. 2d 602, 648 N.W.2d 23.  "The circumstances of the situation including what has been communicated by the police officers, either by their words or actions, shall be controlling under the objective [reasonable person] test." *Blatterman*, 362 Wis. 2d 138, ¶30 (quotation marks and quoted source omitted).

¶26    The State bears the burden of proving that both an investigatory stop and an arrest comply with the Fourth Amendment of the federal constitution and Article I, Section 11 of the Wisconsin Constitution.  *Id.*, ¶17 (investigatory stop); *State v. Lange*, 2009 WI 49, ¶19, 317 Wis. 2d 383, 766 N.W.2d 551 (arrest).

¶27    To recap, the Fourth Amendment prohibits seizures unless they are reasonable.

> A seizure occurs if, under the totality of circumstances, the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' request or otherwise

> terminate the encounter. Stated otherwise, a seizure occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.

*VanBeek*, 397 Wis. 2d 311, ¶29 (internal quotation marks and quoted sources omitted). Both an investigatory stop and an arrest are seizures because they both restrain a person's liberty. Pertinent here, the difference between them consists of the degree of restraint and the level of proof. In an investigatory stop, which must be supported by reasonable suspicion, the person is not free to leave until the investigation has been completed. In an arrest, which must be supported by probable cause, the person is not free to leave at all.

## II. Analysis

¶28 This analysis is largely guided by *Blatterman*, 362 Wis. 2d 138, and is broken down as follows: (1) when the investigatory detention began and whether it was supported by reasonable suspicion; (2) whether the duration of the investigatory detention was reasonable; and (3) whether the use of handcuffs was unreasonably intrusive so as to transform the detention into an arrest.[6]

---

[6] Because I conclude that, consistent with the circuit court's ruling, Tek was not arrested when Rocha placed him in handcuffs, I do not address Tek's argument that Rocha lacked probable cause to arrest him when Rocha placed him in handcuffs. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive."). Nor do I address the next steps in the *Blatterman* analysis, namely when Tek was subsequently arrested and whether the arrest at that point was supported by probable cause, because Tek does not raise any issues related to those steps on appeal. *See State v. Blatterman*, 2015 WI 46, ¶¶24-28 and 33-38, 362 Wis. 2d 138, 864 N.W.2d 26 (analyzing whether transporting defendant ten miles to hospital was "within the scope of an investigatory detention," and, after concluding that it was not, whether transporting defendant to hospital was supported by probable cause). *See also State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to review issues that are not, or are inadequately, briefed).

11

¶29    First, the investigatory stop was initiated by Rocha when he approached Tek and began asking him questions that Tek did not answer, and the stop was supported by reasonable suspicion. *See Blatterman*, 362 Wis. 2d 138, ¶¶16, 18-19 (starting analysis of challenge to circuit court's denial of suppression motion with whether incident at issue began with investigatory stop that was supported by reasonable suspicion). At that point, Rocha knew that a car was reported to have been involved in an accident and driving with flat tires in the location in which he found Tek's car, which was stopped facing the wrong direction on the side of the road, in the early hours of a Sunday morning, and that one person was sitting in the driver's seat of the car. At that point, Rocha had sufficient information to reasonably believe "that criminal activity is afoot." *Young*, 294 Wis. 2d 1, ¶21.

¶30    Second, the length of the stop was reasonable. *See Blatterman*, 362 Wis. 2d 138, ¶¶20-22 (next analyzing whether duration of stop was reasonable and whether law enforcement diligently pursued investigation). Assuming, without deciding, that the circuit court correctly determined that Tek was arrested when Rocha transported Tek to the jail, approximately nine and one-half minutes elapsed from the time that Rocha began asking Tek questions until the time that Rocha transported Tek to the jail. *See id.*, ¶33 (concluding that defendant was arrested when he was transported from scene of stop to hospital, because the defendant's transportation was involuntary, he had experienced some restraint since the initial stop, and there was a "diminishing potential for release.") (quoted source omitted). During that time, Rocha and other officers investigated the car and surrounding area, assessing the car's condition and continuing to ask Tek who he was and what happened. Under these circumstances, where Rocha diligently

pursued the investigation over less than ten minutes, the duration of the stop was reasonable.

¶31    Third, the use of handcuffs was not unreasonably intrusive under the circumstances and did not transform the temporary investigatory detention into a warrantless arrest.  *See **Blatterman***, 362 Wis. 2d 138, ¶¶30-33 (analyzing whether defendant's "handcuffing and detention … transform[ed] his temporary investigatory detention into an arrest").  While the use of handcuffs is restrictive, it does not automatically transform an investigatory stop into an arrest.  ***Blatterman***, 362 Wis. 2d 138, ¶31; *see also **State v. Vorburger***, 2002 WI 105, ¶64, 255 Wis. 2d 537, 648 N.W.2d 829 (citing state and federal decisions recognizing that use of handcuffs during an investigatory stop does not necessarily convert stop into an arrest); ***Pickens***, 323 Wis. 2d 226, ¶¶30-32 (stating that use of handcuffs and placement in a squad car "are reasonable only when particular facts justify the measure[s] for officer safety or similar concerns").

¶32    When Tek stepped out of the car after not responding to Rocha's questions and told Rocha to handcuff him or he was leaving, Rocha's reasonable suspicion of some criminal activity—arising from the report of a car being in an accident and driving on flat tires in just the location where Tek's car was stopped, facing the wrong way on the road, at 4:30 on a Sunday morning, with Tek sitting in the driver's seat—had not dissipated, nor had the need for an investigation diminished, and Tek's behavior implicated concerns by a reasonable officer that the investigation could not safely proceed without Tek being handcuffed.

¶33    Less than one minute had elapsed since Rocha had initiated the stop and begun his investigation by asking Tek questions that Tek did not answer.  At that point, the use of handcuffs was justified by Tek's unprompted exiting of the

car, nonresponsiveness to questions, continuous movement, and persistent agitated insistence that he was about to be picked up, in order to enable law enforcement to safely continue the investigation that had just begun based on reasonable suspicion of criminal activity. *C.f. Pickens*, 323 Wis. 2d 226, ¶¶23-24, 30, 33 (concluding that State failed to meet burden of showing that handcuffing and placing defendant in squad car were reasonable where defendant was found sleeping in a car, answered the officer's questions, and did not make any sudden movements, and there was no evidence of illegal activity). Further, Rocha did not by his words or actions in these circumstances indicate that he was detaining Tek for purposes other than as a temporary measure to enable him to safely continue the investigation that he had just begun, in the face of Tek's nonresponsiveness and erratic behavior. Under these circumstances, Rocha's placing Tek in handcuffs was reasonable.

¶34 In sum, I conclude that the initial stop was an investigatory stop supported by reasonable suspicion and that Rocha's placing Tek in handcuffs did not escalate the investigatory stop to an arrest.

### III. Tek's Arguments

¶35 Tek argues that the Rocha did not identify "reasonable suspicion of a crime, any officer safety concerns, or other similar concerns that required the use of handcuffs" where "Tek was unarmed, he was not aggressive, and he followed Rocha's numerous orders." However, the predicates of Tek's argument are refuted by the record.

¶36 As to Rocha's reasonable suspicion, the test is objective, not subjective, and, as explained above, a reasonable officer in Rocha's position would reasonably suspect criminal activity related to impaired driving based on

the circumstances present here. Tek states that Rocha "did not observe any evidence of a crime," but under the law stated above, to have reasonable suspicion an officer need only observe circumstances that would lead a reasonable officer, with as here eleven and one-half years of experience and relevant training, to believe that criminal activity related to Tek's apparent bad judgment in driving on flat tires and improperly parking the car at 4:30 on a Sunday morning, along with a report that a car had been seen in that location driving on flat tires and involved in an accident, warranted further investigation.

¶37 As to Tek following Rocha's orders, the video recording shows that Tek was unresponsive to Rocha's questions, agitated, and at times incoherent. Tek was clearly resisting answering Rocha's questions and not cooperating with Rocha's investigation. As to officer safety concerns, the video recording shows that Tek's nonresponsive and erratic behavior in reaction to Rocha's questions did implicate concerns that the investigation could not safely proceed unless Tek was placed in handcuffs.

¶38 Tek argues that "Rocha's use of handcuffs was not justified by Mr. Tek's continued plea to leave." However, as just explained, it was the entirety of Tek's response to Rocha's initiation of the investigation, not only his "plea to leave," that rendered the use of handcuffs not unreasonably intrusive.

¶39 Tek argues that "Tek was under no obligation to answer Rocha's questions, let alone be subjected to cuffing as a result of answering the officer's questions." This argument ignores the context of the encounter. Rocha was not approaching Tek for a voluntary police encounter in which Tek would not be

obligated to answer questions. *See VanBeek*, 397 Wis. 2d 311, ¶26.[7] Instead, as stated above, Rocha was conducting a lawful investigatory stop—a type of seizure—when he approached Rocha in his car on the side of the road based on reasonable suspicion of criminal conduct related to impaired driving. Rocha was asking Tek questions in order to "obtain information confirming or dispelling" his suspicions in the circumstances described repeatedly above. *Berkemer*, 468 U.S. at 439. Tek's refusal to cooperate with Rocha's questioning and his erratic behavior contributed to Rocha's reasonable belief that it was necessary to physically detain Tek in handcuffs in order to safely complete the investigation.

¶40 Tek argues that he "had not attempted to escape or evade police custody." Again, this argument ignores the totality of the circumstances. Moreover, the record shows, and the circuit court found, that Tek had told Rocha immediately and repeatedly that he would leave if not handcuffed and that he was about to be picked up. Tek cites no law obligating an officer to wait, when a person who is behaving erratically and nonreponsively says he or she will leave if not detained, until that person tries to leave before taking measures to ensure that

---

[7] The court in *VanBeek* stated:

> Not every police-citizen interaction implicates the Fourth Amendment. Law enforcement officers may approach citizens on the street, put questions to them, and ask for identification without implicating the Fourth Amendment "as long as the police do not convey a message that compliance with their request is required." Absent law enforcement conduct that indicates required compliance, these types of interactions are consensual encounters and generally do not receive Fourth Amendment scrutiny.

*State v. VanBeek*, 2021 WI 51, ¶26, 397 Wis. 2d 311, 960 N.W.2d 32 (internal citations omitted).

16

the officer can safely complete the investigation that the officer has stopped the person to undertake.

¶41 Tek's assertion that "Rocha [did not] identify any reason why Mr. Tek needed to be in handcuffs" to complete the investigation, fails for the reasons already stated.

¶42 Finally, Tek argues that Rocha's actions that followed his placing handcuffs on Tek, including his searching Tek's pockets, pulling him to the squad car, and placing him in the squad car for eight minutes, "would confirm any reasonable person's belief that he was under arrest." However, it is Rocha's placing Tek in handcuffs that Tek argues transformed his detention into an arrest. Rocha's actions that followed have no bearing on whether the use of handcuffs at that time transformed the detention into an arrest.

¶43 In sum, based on the totality of circumstances here, I conclude that it was reasonable for Rocha to place Tek in handcuffs in order to safely proceed with his investigation, and that Tek was not arrested when Rocha did so.

## CONCLUSION

¶44 For the reasons stated, Rocha's challenge to the circuit court's denial of his motion to suppress is rejected and the judgment of conviction is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.